SCHOOL CITY OF GARY, INDIANA, A MUNICIPAL SCHOOL COR-PORATION; FREDERICK C. FORD; ALFONSO D. HOLLIDAY, II; EMILY CALDWELL; THEODORE NERING, JR.; JOE A. TORRES, AS TRUSTEES OF THE SCHOOL CITY OF GARY, INDIANA *v.* CONTI-NENTAL ELECTRIC CO., INC., AN INDIANA CORPORATION.

[No. 3-473A41. Filed October 16, 1973. Rehearing denied December 11, 1973. Transfer denied March 11, 1974.]

*Timothy F. Kelly, Palmer C. Singleton, Jr., Tinkham, Beckman, Kelly & Singleton,* of counsel, of Hammond, for appellants.

*Porter R. Draper, Elsie C. Draper, Draper & Draper,* of Gary, for appellee.

SHARP, J.—This case represents an ongoing dispute between the parties to the appeal decided on September 20, 1971 by the Appellate Court of Indiana in *School City of Gary* v. *Continental Electric Co.* (1971), 149 Ind. App. 416, 273 N.E.2d 293. No good purpose would be served to restate the record up to September 20, 1971 which is readily discernible from an examination of Judge Robertson's opinion. The contents of that opinion represent the law of this case. We are here concerned with ongoing events and disputes subsequent to September 20, 1971.

On June 7, 1972 Appellee Continental Electric filed in the trial court, under the same cause number, the following:

"MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO TRIAL RULE 60 (B) (8)

COMES NOW the Plaintiff, by its attorneys, Draper and Draper, and moves the Court, pursuant to Rule 60 (B) (8) of the Indiana Rules of Trial Procedure, and the general equitable powers of this Court, to vacate and set aside the judgment entered against the Defendants in this cause on the 23rd day of November, 1970, (attached hereto as Exhibit 'A'), as affirmed by the Appellate Court of Indiana, on an appeal taken by Defendants, on September 20, 1971, (attached hereto as Exhibit 'B'), and to grant leave to Plaintiff to file an Amended Complaint, a copy of which is attached hereto, on the ground that the conduct of the

Defendants has denied to Plaintiff the relief to which they were entitled, as more fully appears from the Affidavit of William Walton, President of Continental Electric Company, Inc., hereto attached as Exhibit 'C'."

The relevant portions of the affidavit of William Walton are:

"1. He is President of Continental Electric Company, Inc., an Indiana corporation, doing business at 640 W. 5th Avenue, Gary, Indiana (hereinafter Continental).

2. Continental is the plaintiff in Cause Number 170-601, Continental Electric Co., Inc. vs. School City of Gary, Inc., et al.

3. On November 23, 1970, this Court issued findings of fact and conclusions of law in favor of Continental and issued a mandatory injunction ordering the defendant School City and the individual trustees of the School City to execute a contract with Continental for the electrical construction work involved in remodeling and additions to Pulaski Junior High School.

4. The School City and the Trustees appealed the decision of this court.

5. On September 20, 1971, the Appellate Court of Indiana, Division No. 1, affirmed the opinion of the trial court finding in part as follows: [Here sets out a portion of the opinion]

6. Subsequent to September 20, 1971, the School City and the trustees tendered to Continental Electric a formal contract purporting to be for the electrical construction work, on the Pulaski School project. Said contract is attached hereto as Exhibit 'D'. Said tendered contract was undated and signed by Alfonso Holliday and Joe A. Torres. Mr. Holliday was not president of the School City nor was Mr. Torres secretary of the School City at the time said contract was tendered to Continental.

7. Prior to the time School City tendered to Continental the supposed contract for the electrical work on the Pulaski School project, Continental learned through contracts with other local contractors that all other contracts for the project had been returned to the School City.

8. Because construction which was a condition precedent to the electrical work had not been performed, it was impossible for Continental to perform on the contract tendered to it by School City. Continental's inability to perform was in no way caused by any action of Continental.

9. Continental then employed Attorney Porter R. Draper of the firm of Draper and Draper, 5800 Broadway, Gary, Indiana, to represent it in reference to a claim against the School City arising out of the contract with the School City for the work on the Pulaski School which should have been awarded to it in the summer of 1970. Mr. Draper attempted to arrange a meeting on December 3, 1971. He was advised that such an appointment would be made with the trustees of the School City not later than Wednesday, December 8th.

10. At the time Mr. Draper sought to arrange such a meeting, he telephoned Dr. Robert W. Schaerer, then Supervisor of Business Services of School City, and advised Dr. Schaerer the reason for his call. Upon announcement of that reason and before any discussion between Mr. Draper and Dr. Schaerer, Dr. Schaerer said 'The School City isn't going to remodel Pulaski School. You have a hollow victory and a worthless contract.'

11. Thereafter, a meeting was held on December 6, 1971, in the offices of Dr. Robert W. Schaerer, Supervisor of Business Services, School City of Gary, Ind., 620 East 10th Street, Gary, Indiana. Mr. Gibbs, Mr. Walton, Mr. Schmidt and Mr. Draper attended this meeting. Mr. Draper outlined the position of Continental with respect to rights believed to have accrued as result of the Appellate Court opinion in the initial law suit. There was also a discussion of the desirability or the possibility of negotiating a settlement of Continental's claim against the School City for the purpose of avoiding protracted litigation by the School City or other against it. Mr. Draper and the representatives of Continental were advised that the School City was at that moment in a very difficult situation as a result of a shortage of funds to pay teachers and an imminent closing of the school for lack of funds. The Board requested that determination of the Board's attitude toward Continental's position be postponed until January 17, 1972. Mr. Draper agreed to await further word from the School City or its counsel until January 17, 1972, provided only that no rights of Continental would be jeopardized as a result of a delay to suit the convenience of the School Board in view of the other very difficult problems facing it at that time.

Mr. Draper made a record of the events of this meeting in an uncontradicted letter dated December 8, 1971, addressed to Dr. Schaerer, which concludes as follows:

"Having thus recorded here the essence of our discussion, I reiterate the delay by us is occasioned only by our wish

to accede to your gentlemanly request and our understanding of the difficulties the School Board is facing. If for any reason this letter does not accurately reflect the conversations held and understanding reached between us, please advise. Otherwise, we will rely on the position set forth in this letter.'

12. On January 24, 1972, Mr. Draper wrote the following letter to William J. Regan, Attorney at Law, 6 E. 67th Avenue, Merrillville, Indiana, Counsel for the School City:

"Dear Bill: This will confirm our telephone conversation on Friday last. In that discussion we talked about the reply to my letter to Dr. Schaerer of December 8, 1971. In that communication I indicated our willingness to wait until January 17, 1972 to hear what attitude the School Board has toward the Continental claim.

As you will recall, there was no response on January 17th, again because of other pressing matters involving the Board, and you had told me you were planning to meet with them last Tuesday night and would give me a response on either Wednesday or Thursday.

Then, on Friday, you told me it would not be possible for you to do business because one member of the Board was absent from the meeting due to illness, and Dr. McAndrew was also missing as a result of pressing economic problems.

You told me you would get in touch with me as quickly as possible with regard to the matter, and I assured you we would do nothing further absent hearing from you within a relatively brief period of time, so long as no rights of Continental Electric were prejudiced as a result. In accordance with that understanding, you may be assured we will not take further action absent hearing from you but based solely upon the proviso set forth in the next preceding sentence.'

13. In response to this letter Mr. Regan wrote to Mr. Draper on January 27th requesting that Mr. Draper call Mr. Regan at his earliest convenience to set a time and a place for a meeting. Such a meeting took place at 3:30 o'clock P.M., Thursday, February 17, 1972. On February 23, 1972, Mr. Draper wrote to Mr. Regan:

'This will confirm our discussion of 3:30 P.M. Thursday, February 17th. If you will recall, that meeting had been delayed for some period of time because officials of the School City of Gary were in Indianapolis to attend ses-

sions of the legislature, because of the possibility of obtaining relief for the economically destitute entity which they represent. Extensions of time within which to hold such a meeting were granted by us out of courtesy, because you had advised the school officials so engaged.

In our discussion I outlined the position of Continental Electric albeit in generality. I stated our reasoning based on both case and text law which we believe are applicable to the situation. At the conclusion of the conference, you advised me you did not believe the School City would be willing to discuss the detriment Continental Electric alleges it suffered because the School City of Gary does not intend to build the Pulaski School, even though it had delivered an executed contract to my client for electrical installations in the structure that was once proposed to be constructed. You also advised you did not believe the School City would honor any claim by Continental Electric absent a judgment.'

14. On February 28, 1972, Mr. Regan wrote to Mr. Draper as follows:

'This will acknowledge receipt of your letter dated February 23, 1972. In order to save any confusion, clarification of one portion of your letter is deemed in order. Although you stated that your information is that the School City does not intend to build the Pulaski School and this is the material element of your case, the course of such information could not have been our conference.'

15. To date no remodeling or additions to Pulaski School pursuant to the specifications and plans advertised on June 5, 1970 and June 19, 1970 has been undertaken.

16. Continental has not been requested to commence work on Pulaski School project pursuant to its bid submitted to the School Board and found to be the lowest and best by the trial court as affirmed by the Appellate Court.

17. Because no work has proceeded on the Pulaski School project, Continental has been damaged to the extent that it has expended time, effort and money in preparation of its bid, and to the extent that it was forced to pursue legal remedies to compel the School Board to perform its legal duty as set forth in the statutes governing construction of public work and to the extent that it has been deprived of the work on the Pulaski School project.

18. Continental has at all times been diligent in the pursuit of its remedies and in its attempt to fairly negotiate

an amicable solution of its claim against the School City and the trustees.

19. Continental has at all times acted in good faith in the pursuit of its remedies and in its attempt to negotiate an amicable solution of its claim against the School City in an attempt to avoid protracted litigation."

On October 23, 1973 the Appellant School City of Gary filed its Motion to Dismiss as follows:

"Comes now the defendants, SCHOOL CITY OF GARY et al., by its attorneys, TINKHAM, BECKMAN, KELLY AND SINGLETON, pursuant to Rule 12 of the Indiana Rules of Court and prays for dismissal of plaintiff's CONTINENTAL ELECTRIC COMPANY, INC., motion for relief of judgment for the following reasons:

1. The motion for relief from judgment filed by the plaintiff, Continental Electric Company, Inc., does not state a claim upon which relief can be granted as said motion is beyond the scope of Rule 60 (B) (8) as the plaintiff, Continental Electric Company, Inc., was the prevailing, successful party before the Lake Superior Court, Room Number One, and likewise, upon the appeal of said action to the Court of Appeals to the State of Indiana, said plaintiff, received a favorable decision which affirmed the decision and judgment of the Lake Superior Court, Room Number One, all as shown by the records of this Court. Said plaintiff, having been the prevailing party both in the Trial Court and upon appeal, is not now in a position to seek relief from the judgment it sought and was granted.

2. That plaintiff, Continental Electric Company, Inc., in asking for an equitable remedy in the original action has precluded itself from now seeking a remedy at law. The Court, in the original action agreed with the plaintiff, Continental Electric Company, Inc., that there was no adequate remedy at law and consequently, an equitable remedy was granted. This finding cannot now be reversed.

3. That plaintiff, Continental Electric Company, Inc., received a judgment in its favor in this action, and consequently is estopped by such judgment from seeking any other relief in this action."

On December 12, 1972 the trial court granted the Appellee's motion under Rule 60 (B) (8) and permitted Appellee leave to file an amended complaint and overruled Appellants' mo-

tion to dismiss. On December 26, 1972 the Appellee filed its supplemental and amended complaint which alleged:

"1. On November 23, 1970, this Court entered a decree and judgment against the Defendants enjoining them from entering into a contract for the electrical construction work involved in remodeling of and additions to Pulaski Junior High School with Gibson Electrical Company and issuing a mandatory injunction compelling Defendants to award a contract for said work to the Plaintiff.

2. Defendants took an appeal from this judgment, but on September 20, 1971, the judgment of this Court was affirmed.

3. Subsequent to said decision of the Indiana Court of Appeals, the Defendants tendered to the Plaintiffs a formal contract for the electrical construction work on the remodeling of and additions to Pulaski School.

4. Said tendered contract was not dated and was signed by Alfonso D. Holliday and Joe A. Torres. Mr. Holliday was not president of the defendant nor was Mr. Torres secretary at the time said alleged contract was tendered.

5. Sometime prior to the tendering of said undated formal contract on a date unknown to the Plaintiffs, but well known to the Defendants, the Defendants had determined not to proceed with the remodeling of and additions to the Pulaski School.

6. Sometime prior to the date of tendering said undated contract to the Plaintiffs on a date unknown to the Plaintiffs, but well known to the Defendants, the Defendants had requested and received from the general contractor of the project, Calumet Construction Company, and the mechanical contractor of the project, Eibel and Sons, Inc., contracts tendered to said contractors for work the completion of which or at least the commencement of which was a condition precedent to the electrical work on said project.

7. Because of Defendants' decision not to proceed with the project and the Defendants' request for and receipt of already executed contracts from other contractors on the project, the undated contract tendered to the Plaintiffs which purported to fulfill the mandate of this Court as affirmed by the Indiana Court of Appeals, was a nullity, the subject matter being impossible of performance.

8. The plaintiffs, therefore, have been denied the benefits of the judgment which this Court, as affirmed by the Indiana Court of Appeals, rendered in their favor. Said denial of

benefits has in no way been caused by fault of the Plaintiff but is the direct result of unlawful and willful acts of the Defendants.

9. This Court, as affirmed by the Indiana Court of Appeals, found that the actions of the Defendants in refusing to award the contract for the Pulaski School work to the Plaintiffs, the lowest and best bidder on the project, was an abuse of discretion by the Defendants, showed unlawful favortism (sic) in the selection of contractors for a public work, and was tantamount to constructive fraud.

10. Because of the unlawful and willful act of the Defendant, the Plaintiff has been unable to perform the electrical construction work on the Pulaski School remodeling project.

11. Because of the unlawful and willful acts of the Defendant, the Plaintiff has been denied the benefits to which it was entitled.

12. At all times since the commencement of this action, the Plaintiff has diligently and in good faith pursued its rights.

13. Defendants have refused to tender to the Plaintiffs, although ordered to do so by this Court and by the Indiana Court of Appeals, a contract for work on the Pulaski School which is other than a nullity.

14. By reason of the foregoing facts, and all the facts stated in the original complaint, Plaintiffs have been damaged in the sum of Seventy Five Thousand and 00/100 ($75,000.00) Dollars."

In its motion to correct errors filed January 8, 1973 the Appellants assert error in denying its motion to dismiss, in granting relief under TR. 60(B)(8) and in permitting the Appellees to file a supplemental and amended complaint.

Generally the denial of a motion to dismiss under TR. 12(B)(6) is not in itself a final appealable order. Therefore that part of the motion to correct errors presents no meritorius proposition for our consideration.

Even aside from the non-appealable and non-final aspects of the denial of the motion to dismiss, the allegations of the TR. 60(B)(8) motion and the supplemental and amended

complaint allege enough, on their face, to survive a motion to dismiss under TR. 12 (B) (6).

In its motion under TR. 60 (B) (8) and in its supplemental and amended complaint the Appellees have made allegations against the Appellants which, *if proven,* would constitute a wilful and deliberate attempt by the Appellants to avoid the mandate of the Appellate court in its opinion of September 20, 1971. These allegations suggest an attempt to disobey a final valid judgment. While these allegations are related to the same subject matter as the September 20, 1971 opinion they raise some new and different issues which were not, and probably could not have been litigated in this case before September 20, 1971. We would emphasize that the trial court has, up to this point, permitted the Appellees to plead certain facts and ask for certain relief. It is still the obligation of the Appellee to prove its case. It is still for the Appellants to answer these assertions by pleading and proof and it is still for the trial court to be convinced. We do not understand the trial court to have made any final determination as to the Appellee's entitlement to relief under TR. 60 (B) (8). To the extent that the trial court has not made such a final determination the following comment of our Supreme Court in *Caley* v. *Lung* (1971), 257 Ind. 116, 271 N.E.2d 891, 892, is relevant:

> "We need not, however, decide this question at this time. Although the issue of appealability has not been raised, we believe it is controlling in this matter. TR. 60 (C) reads, in part:
>
>> 'A ruling or order of the court *denying or granting* relief, in whole or in part, by motion under subdivision (B) of this rule shall be deemed a final judgment, and an appeal may be taken therefrom. * * *' (our emphasis)
>
> In the instant case, relief has been neither granted nor denied by the trial court. Regardless of how we characterize appellee's motion to set aside, the denial of appellants' motion to dismiss is not an appealable order."

This should be contrasted to the situation in *Public Service Commission* v. *Schaller* (1973), 157 Ind. App. 125, 299 N.E.

2d, in which the trial court did make a final negative decision in regard to relief under TR. 60(B)(8).

*Schaller* well illustrates the difficult problems of proving a basis for relief under TR. 12(B)(6). (There are a number of important factual contrasts between that which is alleged in this case and that alleged in *Schaller*. Here the action was brought within a year of the date of final judgment. We cannot say here, as a matter of law that said motion here was not made "within a reasonable time" under TR. 60(B). The only time limit for bringing a motion under Rule 60 (B)(8) is reasonableness. For example, in *Barber* v. *Turberville* (D. C. Cir. 1954), 218 F. 2d 34, the motion was entertained after seventeen months; in *L. P. Steuart, Inc.* v. *Matthews* (D. C. Cir. 1964), 329 F. 2d 234, two years was not untimely; in *In re Estate of Cremidas* (D. Alaska 1953), 14 FRD 15, more than three years had elapsed; in *Klapprott* v. *United States* (1941), 335 U.S. 601, four years was not unreasonable, and in *United States* v. *Karahalias* (2d Cir. 1953), 205 F. 2d 331, thirteen years was not unreasonable under the circumstances. Here there are allegations which would indicate that the pre and post judgment equities are not the same. Here the allegations are sufficient to invoke the mandatory provisions of TR. 60(D) that "the court shall hear any pertinent evidence.")

The ruling of our Supreme Court in *Caley* is supported by the statement in Moore, *Federal Practice,* 60.30(1) at p. 418 (2d ed. 1972):

> "See: *United States* v. *Agne* (3rd Cir. 1947) 161 F. 2d 331 (order vacating a default judgment interlocutory and not appealable) and *Stathatos* v. *Arnold Berstein Steamship Corp.* (2d Cir. 1953), 202 F. 2d 525 (order setting aside an arbitration award and directing a resubmission to arbitration is akin to an order granting a new trial, is interlocutory and nonappealable.)"

*Caley* is also consistent with cases under identical provisions of the Federal Rules of Civil Procedure. See *United States* v.

*Agne* (3rd Cir. 1947), 161 F. 2d 331 and *Stathatos* v. *Arnold Bernstein Steamship Corp.* (2d Cir. 1953), 202 F. 2d 525.

Counsel in their oral arguments here indicate that a number of the assertions made by the Appellees are and will be hotly contested. It is for this precise reason that there are mandatory provisions for a hearing in TR. 60 (D). See also *Public Service Company* v. *Schaller, supra.*

Professor Moore expands his point as follows: "Where the grant or denial of relief depends upon a discretionary appraisal of the facts of the particular case, the District Court's determination is subject to review only for abuse" and that TR. 60 (B) (8) should be liberally construed "for the purpose of doing substantial justice. . . . Under all the surrounding circumstances such action is appropriate in the furtherance of justice." *Moore, supra,* Sections 60.30 (1), 60.19 and 10.27 (1).

There are a number of helpful sources for insight into the origins and purposes of TR. 60 (B) (8). Justice Black may have cut through a great deal of legal theory and history with this remark in *Klapprott* v. *U.S., supra:*

> "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."

Although it is rare, the provisions of TR. 60 (B) (8) are available to a prevailing party. See 7 *Moore, supra,* 60.18 (8) and 60.22 (1). See also, *Ferraro* v. *Arthur M. Rosenberg Company* (2d Cir. 1946), 156 F. 2d 212. In this same regard the following is relevant:

> "e. The new rule does not restrict relief to a person against whom the judgment was rendered, except under Rule 60 (B) (4). It is hoped that this will overrule *Combs* v. *Hyden,* 1968, 142 Ind. App. 426, 235 N.E.2d 77 (plaintiff obtaining default judgment not allowed to avoid judgment for excusable neglect upon discovering that defendant was insured.)" 4 Harvey, Ind. Prac. 222 (1971)

Both Dean Harvey and Professor Moore agree on the desire for liberal construction. The former states:

> "Rule 60(B)(8) is a catch-all provision allowing the courts to vacate a judgment within the residual power of a court of equity to do justice. Experience under its counterpart of the Federal Rules does not lend much support as to its meaning except that it is deliberately construed to include old remedies not covered by other statutes and precedents and extended to new situations . . . This provision should be allowed to grant relief to a party on broad equitable grounds where under all the circumstances a need for relief is clearly demonstrated." 4 Harvey, Ind. Prac. 215, § 60.17 (1971)

An examination of the record indicates no reversible error in the proceedings since September 20, 1971 in this case but the hard issue of right to relief under TR. 60(B)(8) can only be determined here after all necessary pleading is completed and after a full evidentiary hearing is held. Therefore, this case is affirmed and remanded for those purposes.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 301 N.E.2d 803.