Cynthia Dawn **RUSSELL**, Appellant–Respondent,

v.

Joel K. **RUSSELL**, Appellee–Petitioner.

No. 49A04–9507–CV–270.

Court of Appeals of Indiana.

June 6, 1996.

Rehearing Denied Aug. 5, 1996.

---

Jackie S. Dodd, Indianapolis, for appellant.

## OPINION

CHEZEM, Judge.

### Case Summary

Respondent–Appellant, Cynthia Russell ("Mother"), appeals from the trial court's order of custody. We affirm, in part and reverse and remand, in part.

### Issues

Mother presents five issues for our review, which we restate as:

I. Whether a husband and wife can disestablish the husband's paternity of a child born during their marriage by an agreed entry in a dissolution;

II. Whether the trial court had jurisdiction to determine that J.R. was a child of the marriage in its Decree of Dissolution;

III. Whether the newly-discovered evidence of a DNA test requires the granting of Mother's Motion to Reopen the Case to Modify Findings and Judgment and Submit Newly Discovered Evidence;

IV. Whether the trial court abused its discretion in awarding physical custody to Joel Russell ("Husband"); and,

V. Whether the trial court erred in failing to file opposing affidavits, pursuant to Rules of Appellate Procedure, Appellate Rule 7.2(3)(c).

### Facts and Procedural History

Once again, we are presented with facts which do not fit into the statutory schemes of either the paternity or dissolution statutes. We rely instead on Indiana's rich history of common law. Mother and Husband married when mother was three months pregnant with J.R., who was born in 1987. A year later, twins were born to Mother and Husband. In 1993, Mother left Husband and took the children to Florida to live near her parents. She was employed at her parents' business and also received health insurance benefits for herself and the children. The children were enrolled in school and day care while in Florida. Husband followed his family to Florida and, without Mother's consent, took all three children back to Indiana. Mother immediately returned to Indiana, only to learn that, on October 29, 1993, Husband had filed for dissolution of the marriage and had successfully received temporary custody of the children and a restraining order against Mother.

On December 22, 1993, Mother filed her Cross–Petition for Dissolution. On February 4, 1994, Mother and Husband filed an Agreed Entry of Joint Custody and Visitation, which was approved by the trial court. The children thereafter spent 3.5 days with each parent per week. The twins are enrolled in an IPS kindergarten near Husband's home and J.R. is enrolled in a Plainfield school.

Not long after, on April 15, 1994, Mother filed an Emergency Petition for Temporary Custody and Petition to Terminate Visitation, wherein she alleged that Husband had physically abused the children. Her petition was denied. Husband had thrown an object at one of the twins which required that the child get stitches. Additionally, Husband had spanked one of the children with a belt, which left marks on the child's legs. Husband admitted the spanking incident and was reprimanded by Child Protective Services. He claimed the thrown object incident was an accident. Another incident involved a toy which dropped on one of the children's head and caused injury. Husband admitted the incident but claimed it too was an accident.

On May 5, 1994, Mother filed an Emergency Petition for Modification of the February 4th Agreed Entry, wherein she renewed her allegation of child abuse and alleged, for the first time, that Husband was not the biological father of J.R. No order exists in the record. On May 23, 1994, Mother's Verified Petition for Custody and Visitation Evaluation was granted by the trial court. Dr. Ehrman, a psychologist, was approved by the court to evaluate the children and adults and make a recommendation with regard to custody and visitation.

On May 27, 1994, Mother filed a Motion to Amend Respondent's Cross–Petition for Dissolution, which once again alleged the nonpaternity of Husband over J.R. Once again, there is no order in the record granting or denying that motion. However, on June 15, 1994, the trial court issued an order, at Mother's request, for DNA testing. Husband did not comply. On December 28, 1994, Mother renewed her Motion to Modify the Agreed Entry of February 4th, combined with a Motion for Contempt and a Motion to Compel DNA Testing. She based her Motion to Modify on Dr. Ehrman's evaluation, which recommended Mother have physical custody of the children and that Husband be given liberal visitation, pending his receipt of psychological counseling. Once again, the record contains no rulings on those motions. Shortly thereafter, on December 30, 1994, the trial court ordered Husband to appear, upon Mother's motion.

A guardian *ad litem* was appointed for the children on January 25, 1995. On February 3, 1995, Husband, under threat of contempt for his failure to submit to DNA testing, and Mother filed an Agreed Entry of Paternity, which was approved by the trial court. This Agreed Entry stipulated that Husband was not the biological father of J.R. On April 30,

1995, the guardian *ad litem* filed her report, which recommended that Mother be given physical custody of all three children and that father be given more than guideline visitation.

Nonetheless, on June 20, 1995, the trial court entered an order granting joint custody, with physical custody going to Husband. On June 30, 1995, Mother filed a Motion to Reopen the Case and Modify Findings and Judgment and Motion to Submit New Evidence, which was denied. On July 10, 1995, Mother filed a Motion for Stay of Execution and Findings of Fact, to which she attached a copy of Thomas Griffith's ("Griffith") Petition to Establish Paternity, which had been filed in Juvenile Court on June 29, 1995. Once again, her motion was denied. On the same day, the trial court issued the Decree of Dissolution, which placed physical custody of the children with Husband and which also made a factual determination that J.R. was a child of the marriage. The next day, Mother filed her Praecipe and also filed a Motion for Stay of Execution Pending Appeal, which was denied.

On July 17, 1995, Mother filed a Cross–Petition for Paternity in juvenile court, and submitted a copy to the dissolution court. Likewise, on September 7, 1995, Mother filed a Memorandum of Explanation with the juvenile court, and submitted a copy to the dissolution court. Attached to the Memorandum and Explanation were the results of the DNA testing of J.R. and Griffith, which indicated that there was a 99.99% probability that Griffith was J.R.'s biological father.

On December 5, 1995, Mother filed a Motion to Correct the Record because the correct court reporter did not certify the record. The motion was granted and the error was corrected. On January 4, 1996, Mother filed a Motion to Approve of Affidavits Supporting the Record and Certification. She based this motion on an alleged comment made by the trial judge, John Hanley. He purportedly stated that "no one is going to make a bastard out of a child in this court." The transcript of proceedings does not contain such a statement. Judge Hanley denied her motion.

*Discussion and Decision*

■ We note at the outset that Husband failed to file an appellee's brief. Where an appellee fails to file an appellate brief, the judgment may be reversed upon the appellant's showing of prima facie error. *Rieddle v. Buckner*, 629 N.E.2d 860 (Ind.Ct.App. 1994). Prima facie error is error which appears on the face of the argument. *Id.* However, although we may reverse upon a showing of prima facie error when the appellee fails to file an appellee's brief, we are not compelled to do so and may, in our discretion, decide the case on the merits. *S.M.V. v. Littlepage*, 443 N.E.2d 103 (Ind.Ct.App. 1982).

### I.

■ We must first determine whether a husband and wife can disestablish a husband's paternity of a child born during their marriage by an agreed entry in a dissolution. We are not asked today to determine the merits of the paternity action asserted by Griffith. We focus only on the agreed entry of paternity filed by Mother and Husband and also on what rights, if any, Mother and Husband had to seek a factual determination at the time of dissolution as to whether J.R. was a child of the marriage. Although the trial court did not state such in its final judgment, it was correct in disregarding the agreed entry because the dissolution (trial) court had no jurisdiction to approve of such an agreed entry. The juvenile court has exclusive original jurisdiction in proceedings concerning the paternity of a child. I.C. 31–6–2–1.1(a)(3). The dissolution court had no jurisdiction to approve of the agreed entry.

■ The following chart illustrates the statutes and common law of Indiana and the differences between a dissolution proceeding and an action to establish paternity, in terms of who has standing to bring an action and what court has the appropriate jurisdiction:

| LEGALLY INTACT MARRIAGE | DISSOLUTION | PATERNITY |
|---|---|---|
| No parties may petition to establish paternity of a child born into a marriage, as long as the marriage remains legally intact. I.C. 31–6–6.1, *et seq.* | The presumptive father/husband has standing to seek a factual determination as to whether a child is a child of the marriage. *In re Paternity of S.R.I.*, 602 N.E.2d 1014 (Ind.1992). Whether the mother has standing to also seek such a determination has not been judicially determined, unless she is judicially estopped due to her prior, contradictory factual assertions. *L.D.H. v. K.A.H.*, 665 N.E.2d 43 (Ind.Ct.App.1996). | The child and putative father have standing to assert paternity, as long as the marriage is no longer intact. The husband/presumptive father has no standing to disestablish paternity. I.C. 31–6–6.1, *et seq.* The presumptive father may seek an equitable support order if he learns of nonparenthood incidental to unrelated medical tests. *Fairrow v. Fairrow,* 559 N.E.2d 597 (Ind.1990). Whether mother has standing after a divorce has not been determined by common law. She may only, if at all, seek to *establish* paternity. |

We follow the statutes and, absent statutory provisions, the common law. We will not alter our common law, absent a compelling reason to do so. An interpretation of the statutes and common law supporting that chart has been set forth herein:

 Even had the agreed entry been filed in the juvenile court, there is no cause of action supporting such a judicial maneuver. We believe that a denouncement of paternity in a divorce action is not the same as a legal petition to establish paternity under the statute. As will be discussed, the paternity statute may not be used to disestablish paternity. The common law and statutes of this State do not support disestablishment of paternity. Even in the situation of divorce, the husband is subjected to a high evidentiary standard in his attempt to escape parental responsibility for a child born during the marriage. An establishment of paternity, however, is in effect an establishment of paternal rights.

At the time of the agreed entry, February 13, 1995, there had been no dissolution hearing or dissolution decree. Although the parties were engaged in a legal battle for divorce, until the actual time of dissolution, they remained married. Good public policy supports the notion that until such time of a final dissolution, there is always the hope of reconciliation of the parties. For that reason alone we discourage parties to a marriage from entering into agreements which strip paternity from the husband over a child born of the marriage while the parties remain legally bound in marriage.

 This is not to say we should discourage such parties from otherwise stipulating to issues relating to property settlement, potential child custody and/or visitation while they are still married, yet anticipating possible divorce. Such voluntary stipulations are encouraged for sake of judicial economy and for the parties' well-being. However, stipulations with regard to paternity are distinguishable. Most are accompanied by blood testing and, in J.R.'s case, cause the child to be treated differently than his other siblings. As a result of Mother and Husband's Agreed Entry, J.R. suffered the loss of a parent, a potentially emotionally devastating event for a child of such tender years.

 There is another compelling reason for disallowing an agreed entry such as the one in this case: the legislature does not allow for the *disestablishment* of paternity. We believe that the legislature favors the public policy of *establishing* paternity. The paternity statute has no provision to disestablish paternity. It can be used only to establish paternity. Thus, regardless of whether the Mother and Husband are married or divorced, they may never *disestablish* paternity under the current statutory scheme (which is different from requesting a factual determination at the time of divorce as to whether the child is a child of the marriage).

One other reason for disallowing such an agreement rests on the proposition that, to the extent the marriage remains intact[1] and reconciliation is a possibility, although not

---

1. Whether Mother and Husband's marriage was "intact" for practical purposes is not what is meant by "intact." By "intact" we mean that the parties are still legally bound in marriage.

necessarily a probability, such an agreement is void as being against public policy. Parents cannot contract away the rights of a child. *See, Straub v. B.M.T. by Todd,* 645 N.E.2d 597 (Ind.1994), *reh. denied.* Any number of situations may result from modern living arrangements, whereby the adults may attempt to use a child as a means of bargaining for their own ends without protecting the child's best interests. To the extent the child knows no other father, public policy dictates that paternity cannot subsequently be disestablished over the child. This is true even when the parties divorce because the paternity statute does not allow for the disestablishment of paternity.[2] Our supreme court adeptly stated in *Fairrow v. Fairrow,* 559 N.E.2d 597 (Ind.1990):

> [W]e stress that that (sic) the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court.

In *Fairrow,* the presumptive father believed he was the biological father of the child, who was born during his marriage to the child's mother. It was not until eleven years after their divorce that he inadvertently discovered he was not the biological father of the child. He applied to the court, under Trial Rule 60(B)(8), for an equitable support order, based on the new evidence he had discovered. Our supreme court reversed the trial court's decision to deny him relief from the court order of child support. Importantly, Mr. Fairrow did not bring an action under the paternity statute to disestablish paternity. Rather, he merely sought a more equitable order of support.

The facts before us today differ greatly from the facts in *Fairrow.* Husband, under threat of contempt, signed the Agreed Entry which disestablished his paternity over J.R. This stipulation as to J.R.'s paternity occurred while the parties were legally married. Husband did not discover his non-paternity inadvertently as a result of unrelated medical tests. Rather, Husband knew when he entered into the marriage with Mother that he was not J.R.'s biological father. Nevertheless, he was willing to hold the child out as his own. He even sought legal custody of the child and refused to submit to DNA testing. Griffith, Mother, and Husband agreed early in the marriage that since the marriage was intact, the best interest of J.R. necessitated that Husband be considered the father.

Nor are we dealing with facts similar to those presented to our supreme court in *In re Paternity of S.R.I.,* 602 N.E.2d 1014 (Ind. 1992), where a third party filed an action for paternity after the husband and mother had divorced. Our supreme court allowed such an action, holding that the dissolution court's finding that the child was a child of the marriage was not *res judicata* in terms of the third party's action to establish paternity. The husband was not challenging the order of support, nor did he seek a finding that the child was not a child of the marriage. The public policy reason discussed by the Court was that there is a substantial public policy in correctly identifying parents and their offspring. Also, there is substantial public policy which disfavors a support order against a man who is not a child's father and which favors a support order against a man who is a child's father.

The agreed entry submitted by Mother and Husband did not meet the public policy objectives stated in *S.R.I.* Husband and Mother were not divorced at the time of the agreed entry. The correct father was not identified in the agreed entry and a support order for the child was not affected. In fact, the agreed entry alone could have served to render the child entirely without support

---

2. Once again, we distinguish this type of disestablishment of paternity from that of a cause of action attempting to establish paternity in a third party after the mother and husband have divorced. In the case of the third party, the cause of action, if successful, replaces paternity in another. If the cause of action is unsuccessful, the child retains its ties of paternity with the father into whose marriage the child was born. In either situation, the child does not lose a father.

from a father. When initially questioned by the trial court as to whether Mother intended to establish paternity in another person, she said she did not intend to replace Husband's presumptive paternity with that of a third party. The trial court immediately stated that it would vacate the agreed entry of paternity, whereupon Mother withdrew the agreed entry.[3]

We held in *R.D.S. v. S.L.S.*, 402 N.E.2d 30 (Ind.Ct.App.1980), that the presumption of legitimacy may be overcome by the husband at divorce. There, the husband challenged the finding by the divorce court that the child was a child of the marriage because the child was not conceived in the marriage. The majority opinion was that "a child born to a married woman but not fathered by her husband is a child born out of wedlock." *Id.* at 31, n. 2. In that case, as in the case before us today, the husband had not married the mother until after she was visibly pregnant. They were married three weeks before the birth of the child. Under the holding of that case, had the husband not challenged the paternity at divorce, the child would have been considered a child of the marriage under such theories as equitable adoption, equitable estoppel, *in loco parentis*, or under a contract to support or adopt a child.

We disagree with the holding in *R.D.S. v. S.L.S.* Husband should have been barred from challenging paternity at the divorce due to these theories. He held himself out as the child's father and entered into the marriage with knowledge that he was not the child's father. Moreover, at the time of the agreed entry in this case, there was no third party asserting paternity in J.R., as was the situation in *S.R.I.*

The holding in *Fairrow*, 559 N.E.2d 597, lends more guidance on this issue. After *Fairrow*, a husband, after a final dissolution decree has been issued, may not subsequently escape parental responsibility based on non-paternity when the fact of non-paternity was not discovered incidentally as a result of medical tests performed independent of the divorce proceeding and when there is no third party asserting paternity after the di-

vorce of the mother and presumptive father-husband. Whether this holding should be extended to apply at or prior to a final dissolution has not been addressed under the facts presented. In light of the public policy of assigning equitable orders of child support, it is likely that the holding in *Fairrow* would not bar a husband from asserting his non-paternity at the time of divorce. However, when a man, with knowledge of his non-paternity, agrees to marry the mother, the child is born during the marriage, and the husband holds himself out as the child's father, such facts compel an application of a limited reading of the holding in *Fairrow*, even at or prior to the final decree of dissolution.

We learn several things from the examination of case law and the paternity statute. First, the trial court had no jurisdiction to rule on the agreed entry of paternity. Second, the agreed entry submitted by Mother and Husband was against public policy for the several reasons discussed above. Third, neither Mother or Husband had standing under the paternity statute to disestablish paternity. Fourth, the issue of paternity or non-paternity is independent of the issue of whether a mother or husband may obtain a factual determination at the time of dissolution as to whether the child is a child of the marriage. Finally, an action to establish paternity in a third party after the mother and presumptive father-husband have divorced has been recognized as a valid cause of action by our supreme court. However, under the facts of today's case, we do not examine the merits of Griffith's paternity action, but look only to the validity of the agreed entry of paternity submitted by Mother and Husband. For those reasons we affirm the trial court's decision to vacate the agreed entry of paternity.

## II.

■ We now look to the findings in the decree of dissolution. We must determine whether the trial court had jurisdiction to

---

3. It is questionable whether, because Mother withdrew the agreed entry, she may appeal the effects of such. However, it is her position that she withdrew the agreed entry involuntarily. Re-

gardless of whether Mother involuntarily withdrew the agreed entry, it is clear from the record that the trial court intended to vacate the agreed entry, regardless of Mother's decision.

issue a factual determination that J.R. was a child of the marriage in its Decree of Dissolution. The trial court entered an order of custody and support on June 20, 1995, before Griffith filed his paternity action, which found J.R. to be a child of the marriage. It based that finding on the Petition and Cross–Petition for Dissolution, both of which alleged that J.R. was a child of the marriage. However, that finding issued by the trial court was not a final appealable order or judgment. We therefore examine first, whether the dissolution court had subject matter jurisdiction to make a finding that J.R. was a child of the marriage and, second, what affect, if any, Griffith's petition for paternity which was filed in juvenile court had on the trial court's jurisdiction to enter final judgment as to whether J.R. was a child of the marriage.

■■■■■ Subject matter jurisdiction refers to the power to hear and determine a general class or kind of case. *Board of Trustees of Town (Now City) of New Haven v. City of Fort Wayne*, 268 Ind. 415, 375 N.E.2d 1112 (1978). The absence of subject matter jurisdiction, an issue not subject to waiver, renders a judgment void and open to collateral attack. *Mann v. Mann*, 528 N.E.2d 821 (Ind.Ct.App.1988), *reh. denied, trans. denied.* The parties by consent or agreement cannot confer subject matter jurisdiction on a court. *Twyman v. State*, 459 N.E.2d 705 (Ind.1984).

> [I]f a tribunal possesses the power to determine cases of the general class to which the particular class belongs, it possesses subject matter jurisdiction to consider the particular case, absent specific and timely objections to the jurisdiction of such particular case.... A judgment of a court without jurisdiction of the particular case within the [general] class is not a void judgment. Such jurisdiction can be waived and must be attacked by proper and timely motion.

*City of Fort Wayne*, 268 Ind. at 423, 375 N.E.2d at 1117.

■■■■■ The issue of subject matter jurisdiction may be resolved by determining whether the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by stat-ute. *Behme v. Behme*, 519 N.E.2d 578 (Ind. Ct.App.1988), *reh. denied.* "It does not depend upon the regularity of the proceedings or the correctness of the decision." *Matter of Adoption of H.S.*, 483 N.E.2d 777, 780 (Ind.Ct.App.1985), *reh. denied.*

■■■■■ Indiana Code, Sections 31–1–11.5–3(a) and (b) empower a trial court to hear causes of action for dissolution and for child support. Within the grant of subject matter jurisdiction is the power to determine child support (§ 31–1–11.5–12), child custody (§ 31–1–11.5–20), and visitation (§ 31–1–11.5–24). By filing the dissolution action (and counter-petition for dissolution), Mother and Husband engaged the trial court's subject matter jurisdiction to hear dissolution cases, which includes the authority to decide issues of child custody, support, and visitation. In entering the decree which provided for child support and visitation, the trial court was not without subject matter jurisdiction. The finding with regard to J.R. does not render the dissolution a void judgment. Mother was required to timely challenge any erroneous exercise of authority by the trial court, and her failure to do so waives the issue.

Similar facts were presented to our supreme court in *State ex rel. Hight v. Marion Super. Ct.*, 547 N.E.2d 267 (Ind.1989). In that case, the husband married the mother when she was already pregnant. He knew he was not the child's biological father. He held himself out as the child's father. At the time of dissolution, the parties stipulated that the husband was not the biological father but the court, nonetheless, ordered child support and provided visitation rights. Neither the mother nor the husband objected to the order. When the husband later sought a modification, the mother argued the trial court had no subject matter jurisdiction because the child was not a child of both parties to the marriage. The Court held that because the mother had invoked the general subject matter jurisdiction and failed to raise the issue of subject matter jurisdiction when the trial court entered its order relating to the child, she could not later attack the judgment as being void.

This debate stems from the confusion as to what is meant by "child of the marriage." The dissolution statute defines "child" as "a child or children of both parties to the marriage and includes children born out of wedlock to the parties as well as children born or adopted during the marriage of the parties." I.C. 31–1–11.5–2(c). A court in granting a dissolution has no jurisdiction to enter a custody or support order involving a child who is not a child of the marriage. The case law interpreting this statute with regard to whether a child born during the marriage (regardless of actual paternity) is to be considered a child of the marriage is inadequate.

In *R.D.S.*, the Second District Court of Appeals held that a child must be a child of both parties to the marriage to come within the definition of "child" in Ind.Code § 31–1–11.5–2(c) and to furnish the basis for child support. *R.D.S.*, 402 N.E.2d 30. As a consequence, the *R.D.S.* court rejected as a basis for imposing child support the husband's acknowledgment or equitable adoption of a child he did not father. As mentioned in our discussion of the agreed entry of paternity, we disagree with the holding in *R.D.S.* Additionally, the facts in that case differ greatly from the facts before us today. The husband in *R.D.S.* appealed the order of support, whereas Husband in today's dispute sought custody of J.R. and never raised the issue of non-paternity. Additionally, the court in *R.D.S.* stopped short of holding that the trial court lacked subject matter jurisdiction to enter its order. Rather, it discussed only the presumption of legitimacy and whether that presumption may be overcome at the time of divorce.

Likewise, the facts before us today differ greatly from the facts presented to our supreme court in *McCarroll v. Marion County Super.Ct.*, 515 N.E.2d 1124 (Ind.1987). The Court in that case made permanent an alternative writ previously issued prohibiting the dissolution court from exercising jurisdiction over the custody of a child because the husband was not a parent of the child born prior to the marriage. However, in that case the

facts involved a stepfather who was ordered to make child support payments. The child was born out of wedlock to another man before the stepfather and mother were married.

 Those facts do not parallel a situation in which a child is born during the marriage and the husband holds himself out as the child's father, even past the date of dissolution. Good public policy dictates that we encourage such conduct, so that the child has the benefit of the love and support from a father. A close reading of the statute's language may encompass the facts presented. Specifically, the statute defines "child" as "a child or children of both parties to the marriage *and includes* children born out of wedlock to the parties *as well as children born* or adopted *during the marriage of the parties*." I.C. 31–1–11.5–2(c) (italics added).

Interpretation of this statute has been the subject of much debate. In *Friar v. Taylor*, 545 N.E.2d 599 (Ind.Ct.App.1989), the Second District Court of Appeals reversed a trial court's award of custody to a husband who had challenged a previous court order of support based on his non-paternity of two children who were born during the marriage.[4] The mother appealed, arguing the trial court lacked subject matter jurisdiction to enter the order of custody. The court stated: "We need no rule of construction to interpret such plain meaning. 'Both' means both. To conclude otherwise is to mutilate the statute beyond recognition." *Id.* at 600. Thankfully, seven years later, "both" still means "both". We cannot end our reading of the statute there: "and" means "and"; "as well as" means "as well as". Hence, the statute includes three classes of children: (1) children of both parties to the marriage, "and includes", (2) children born out of wedlock to the parties, "as well as", (3) children born or adopted during the marriage of the parties. I.C. 31–1–11.5–2(c).

 The third class is the class into which J.R. falls. The statute does not read

4. The court in *Friar* relied on the decision in *McCarroll*, 515 N.E.2d 1124 in support of its holding. However, the facts in *McCarroll* indicate that the child was born out of wedlock to

another man before the stepfather married the mother. The child was not a "child of the marriage", as defined by the dissolution statute.

"children born of the parties or adopted during the marriage." It does not read "children born to both parties or adopted during the marriage." Rather, the prepositional phrase "of the parties" modifies the noun "marriage", and not the noun "children." The conjunction "or" used to join "children born" and "adopted" means that both children born and children adopted during the marriage have equal status under the statute. The dissolution statute applies to a child who has been adopted by one or both parties during a marriage. Otherwise, no orders of support or custody could be affected over children who are adopted by parents who subsequently divorce. Likewise, a child who is born during the marriage is a "child of the marriage."

To that extent, a trial court has *per se* subject matter jurisdiction to enter an order of custody, support and visitation with regard to such a child.[5] This is separate from the issue of whether the presumption which creates the subject matter jurisdiction may be rebutted for purposes of achieving an equitable order of support, visitation, and custody. For example, a husband, as did Husband in this case, may wish to continue to hold himself out as the child's father, continuing all obligations, even after the divorce. This may be in the child's best interest, a factual determination to be made by the trial court, assuming the child is a "child of the marriage" pursuant to the dissolution statute. It may be deemed inappropriate by the trial court to allow a mother to encourage the husband to hold himself out as a child's father, if, and only if, he agrees to remain married to the mother. We must not confuse the issue of subject matter jurisdiction with the issue of what is the correct decision for the court to make under the particular facts of any case.

▅▅▅ Since it has been determined that the trial court had subject matter jurisdic-

tion, we next examine what effect, if any, the filing of Griffith's paternity suit had on the jurisdiction of the dissolution court to enter final judgment. We do not recognize the disestablishment of paternity to be a valid cause of action, even if filed in juvenile court and, likewise, we do not recognize a third party's right to assert paternity over a child born into an intact marriage before the parties are divorced. Thus, the agreed entry was invalid and Griffith's petition for paternity was not a statutorily recognized cause of action until after the trial court issued its final decree of dissolution between Mother and Husband. The trial court had jurisdiction over a recognized cause of action—dissolution, child custody and support—while the juvenile court had jurisdiction over a cause of action not recognized—a paternity suit filed by a third party over a child born into an intact marriage before the dissolution of the mother and presumptive father-husband was complete. Both courts were vested with jurisdiction in the respective proceedings. I.C. 31–1–11.5 (dissolution of marriage, child support, and child custody); I.C. 31–6–2–1.1(a)(3) (paternity).

▅▅▅ However, it is important to distinguish an action for paternity from a dissolution proceeding in which a trial court enters certain facts relating to whether the child is a child of the marriage. A denouncement of paternity in a divorce action is not the same as a legal petition to establish paternity under the statute. The trial court, in issuing its findings and judgment of dissolution, did not issue findings as to the paternity of J.R. As previously stated, a finding that a child is a child of the marriage in a dissolution proceeding is not a finding of paternity. Such a finding also does not bind Griffith or J.R. on the basis of *res judicata* in future proceedings from establishing paterni-

5. The Third District Court of Appeals affirmed a trial court's refusal to enter an order of custody when a child was born to the husband prior to his marriage to the child's stepmother. The child's natural mother had died and the child's stepmother married the child's father approximately three years after the child was born. *Caban v. Healey*, 634 N.E.2d 540 (Ind.Ct.App.1994), *reh. denied, trans. denied.* The facts in *Caban* are similar to the facts in *McCarroll*, where the issue involved a stepparent and a child who was not a "child of the marriage" as defined by the dissolution statute. The Second District Court of Appeals reached consistent results with similar facts in *Poulson v. Poulson*, 612 N.E.2d 193 (Ind.Ct.App.1993). The child in *Poulson* was born to the husband in a previous marriage and the stepparent sought custody. *See also, Thompson v. Thompson*, 550 N.E.2d 1332, 1336, n. 2 (Ind.Ct.App.1990).

ty.[6] Thus, the trial court, in issuing its findings, did not infringe on the jurisdiction of the juvenile court to enter findings with regard to paternity. The trial court exercised its jurisdiction over the matters of dissolution.

 However, in *L.D.H. and A.D.H. v. K.A.H. and D.M.*, 665 N.E.2d 43 (Ind.Ct. App.1996), the First District held that a dissolution court and a paternity court have concurrent jurisdiction and the court of dissolution may issue final determinations with regard to paternity (which is separate from making factual determinations as to whether the child is a child of the marriage for purposes of child support). There are several consequences which emanate from that holding, most of which are contrary to the development of common law in this area. First, because the child is not a party to the dissolution, the child cannot be joined as required by our court in *J.E. v. N.W.S. by S.L.S.*, 582 N.E.2d 829, 832 (Ind.Ct.App.1991), *reh. denied, trans. denied*, and in *Matter of Paternity of H.J.F.*, 634 N.E.2d 551, 553 (Ind.Ct. App.1994). Second, as demonstrated in *L.D.H.*, the child will not be guaranteed an appointment of a guardian *ad litem*, which is required in all cases which determine paternity matters on their merits. *H.J.F.*, 634 N.E.2d at 555.

Third, the holding in *L.D.H.* disregards express statutory language which grants the juvenile court *exclusive* jurisdiction with regard to matters of paternity.[7] The holding erroneously states that dissolution and paternity courts have concurrent jurisdiction. Further, such reasoning does not recognize the fact that the court on dissolution is not determining paternity, although it may issue a determination as to whether a child is a child of the marriage for purposes of achieving an equitable child support arrangement. Thus, their jurisdiction is not concurrent. They determine entirely separate matters, albeit, the outcome of the paternity action may subsequently lead to the altering of the rights of a presumptive father who was awarded visitation and/or custody rights by the dissolution court.

Finally, we disagree with the court in *L.D.H.* that "inasmuch as the parties, the subject matter, and the remedies of the competing actions were substantially the same in each action, the juvenile court appropriately deferred to the trial court's extant authority over the issue of paternity...." *L.D.H.*, 665 N.E.2d at 48. The parties were not the same in both actions because the child and the putative father were not parties to the dissolution. The subject matter was not entirely the same because the court on dissolution

---

**6.** Our courts have not addressed the issue of whether a mother is barred by principles of *res judicata* from petitioning the juvenile court for paternity in a third party after the divorce. Clearly, as a party to the dissolution proceeding, she is different than the putative father or the child. However, to the extent the dissolution court does not render judgment as to paternity, that issue has not been litigated until a paternity action is filed. Additionally, she is vested with express statutory standing to file a paternity action under the paternity statute. Finally, to the extent she must include the child as a party to the paternity action, her existence as a party to the paternity action is not material to the outcome of the litigation. Whether she, like husband, may seek a factual determination as to whether the child is a child of the marriage at the time of dissolution, is an unresolved issue.

The First District Court of Appeals has, however, tangentially addressed the issue of whether a mother can seek a factual determination as to whether the child is a child of the marriage at the time of dissolution. *L.D.H. and A.D.H. by her next friend, L.D.H. v. K.A.H. and D.M.*, 665

N.E.2d 43 (Ind.Ct.App.1996). In that case the mother was estopped from challenging her husband's non-parenthood at the time of dissolution because throughout the entire dissolution proceeding she asserted that he was the father of the child. She was judicially estopped from asserting contradictory facts at the end of the dissolution proceeding.

**7.** In reaching its decision, the court in *L.D.H.* relied on the decision of *Dorsey v. Dorsey*, 409 N.E.2d 1233, 1234 (Ind.Ct.App.1980). However, such reliance is erroneous. In *Dorsey*, the child was born to the parties before they were married. The dissolution statute, as then worded, gave subject matter jurisdiction to children born out of wedlock to the parties. It was necessary, therefore, for the trial court to make a determination as to paternity of the child before it could assume subject matter jurisdiction. Additionally, there was no juvenile court in Lake County at the time of that case and the Superior court was vested with the subject matter jurisdiction to determine matters such as paternity. Such is not the case in *L.D.H.* and nor is it the case with the parties today.

does not make determinations with regard to paternity. Additionally, the remedies are not similar in both types of actions: that the dissolution court has subject matter jurisdiction over matters such as custody, support and visitation does not imply it also has subject matter jurisdiction over paternity. If paternity in a third party is subsequently established after the divorce, then matters of custody, support and visitation may be affected if the mother, child, or putative father choose to petition to modify the ex-husband's rights based on the new findings of paternity.

The court in *L.D.H.* fails to recognize the differing, and many times, conflicting interests of the parties involved. The mother, husband, child, and putative father all have different and, most likely, competing interests, the resolution of such will not be accomplished by collapsing paternity matters into dissolution proceedings. It is not until after the mother and presumptive father are divorced that an action for paternity may be validly initiated, thereby preserving the interests of the child, promoting the integrity of the intact family, and recognizing the policy considerations set forth by our supreme court in *Fairrow*.

A finding of paternity in a third party can be made only by the juvenile court. The dissolution court has jurisdiction to enter final judgment with regard to visitation, custody, and support. This is supported by the statutory presumption of paternity of a child born during the marriage. To hold otherwise would provide additional delay to a final judgment and adversely affect the children involved. Conceivably, the party to the divorce wishing to halt its progress could use a third party paternity action or threat of one in ways which might be harmful to the well-being of the child. The possibility of such conduct flies in the face of our supreme court's dicta in *Fairrow*, 559 N.E.2d 597.

▮ Now that we have determined the trial court had jurisdiction to enter its finding that J.R. was a child of the marriage, we next examine whether the trial court was correct in finding that J.R. was, in fact, a child of the marriage. In Mother's Cross–Petition for

Dissolution, she alleged that J.R. was a child of the marriage.[8] In her Motion to Amend Respondent's Cross–Petition for Dissolution, she alleged that Husband was not the biological father of J.R. The trial court did not grant her motion to amend, and nor did it grant her Emergency Petition for Modification of the Agreed Entry, which also alleged that Husband was not the biological father of J.R. The agreed entry was withdrawn by Mother and disregarded by the trial court. Thus, to the extent the Cross–Petition for Dissolution was the only pleading accepted by the trial court, and it stated J.R. was a child of the marriage, the trial court was correct in finding him to be a child of the marriage. Additionally, and apart from the issue of jurisdiction, we have interpreted the dissolution statute to define J.R. as a child of Mother's and Husband's marriage.

### III.

▮ We next examine whether the newly-discovered evidence of a DNA test require the granting of Mother's Motion to Reopen the Case to Modify Findings and Judgment and Submit Newly Discovered Evidence. The motion to modify findings and judgment was made pursuant to Trial Rule 52(B), which requires that such motion be made prior to a motion to correct error. Mother made her 52(B) motion contemporaneous with her 60(B) motion, which is inherently contradictory. She asked the trial court to amend the finding and judgment while she simultaneously asked the trial court for relief from that judgment. Trial Rule 60(B) motions, by definition, are made after Trial Rule 59 motions to correct error are or should have been made. For that reason, Mother, in essence, made her 52(B) motion too late because she made the 52(B) motion contemporaneous with a 60(B) motion. Additionally, the language of the rule indicates the trial court "may" open the judgment and findings but is not required to do so. The trial court correctly denied her motion to amend findings and judgment.

---

**8.** There is the matter of fraud on the court. However, as will be discussed, we interpret the dissolution statute to include J.R. as a child of the marriage.

Mother filed her 60(B) motion pursuant to Trial Rules 60(B)(1) and 60(B)(2), which state:

> **(B) Mistake—Excusable Neglect—Newly Discovered Evidence—Fraud, etc.** On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:
>
> (1) mistake, surprise, or excusable neglect;
>
> (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

In her motion, Mother does not explain how mistake, surprise, or excusable neglect justify her need for relief from judgment. She based her motion on "newly discovered evidence" of Griffith's paternity suit and Husband's non-paternity. However, the filing alone of a paternity suit in juvenile court does not affect the outcome of a dissolution which involves a child who is also the subject of the paternity suit. Should the juvenile court render final judgment as to Griffith's actual paternity, J.R., Mother, or Griffith could at that time petition the court to modify Husband's parental rights under the dissolution decree.

Moreover, Mother had access to the evidence of Griffith's alleged paternity from the date of J.R.'s conception. Such evidence cannot be considered "newly discovered" in terms of a motion to correct error or a motion for relief from judgment. Because the evidence on which Mother relies is not "newly discovered," her motion is a 60(B)(8) motion in disguise. Our supreme court stated in *Fairrow*, 559 N.E.2d at 600, that "we strongly discourage relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence akin to the evidence presented in this case." The trial court correctly denied Mother's motion for relief from judgment.

## IV.

▮▮▮▮ We next determine whether the trial court abused its discretion in awarding physical custody to Husband. Child custody determinations fall within discretion of trial courts and we will not disturb their decisions on appeal absent an abuse of discretion. *Matter of Guardianship of Riley*, 597 N.E.2d 995 (Ind.Ct.App.1992). We are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993).

▮▮▮ In this case, the facts and circumstances before the trial court were that the court-approved psychologist and the guardian *ad litem* both recommended that Mother be given physical custody. Husband admitted to the trial court that he had used drugs in the past and he also admitted to having physically abused at least one of the children. Husband had been reprimanded by Child Protective Services for spanking one of the children with a belt and leaving bruises on the child's legs. On the other hand, there was no evidence that Mother was an unfit parent or that Mother should not have been given physical custody of the children. The trial court did not articulate why it chose to ignore the recommendations made by the court-approved psychologist or the guardian *ad litem.* Nor did the trial court state why it felt that giving Husband physical custody of all three children was in the best interest of the children.

Accordingly, we must look to the evidence to determine whether the trial court abused its discretion. We hold that it was against the logic and effect of the evidence to have given Husband physical custody of the children. We reverse the trial court's award of physical custody to Husband and remand back to the trial court, ordering that primary custody be given to Mother, and visitation be given to Husband as best meets the needs of the children.

## V.

Finally, we must discuss whether the trial court was correct in failing to file opposing affidavits, pursuant to Rules of Appellate Procedure, Appellate Rule 7.2(3)(c). Mother attempted to get sworn affidavits certified by Judge Hanley. The affidavits were an attempt to prove that Judge Hanley stated, "no one is going to make a bastard out of a child in this court." The record does not contain such a statement. Judge Hanley refused to certify the affidavits submitted by Mother. The Rules of Appellate Procedure, Rule 7.2(A)(3)(c) states, in pertinent part:

> If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court.

Judge Hanley refused to certify Mother's affidavits. He also failed to file opposing affidavits. Hence, Mother is correct in asserting error on behalf of the trial court with regard to this issue. However, because we have reversed the trial court's decision with regard to the award of custody to Husband, the error asserted, which seeks to prove a bias against Mother, is not dispositive. We encourage the trial court in future proceedings to abide by the Rules of Appellate Procedure.

Affirmed, in part. Reversed and remanded, in part.

STATON, J., concurs.

DARDEN, J., concurs with separate opinion

DARDEN, Judge, concurring.

While I agree with the resolution of this case, I am compelled to acknowledge that I do not disagree with the Second District's holding in *R.D.S. v. S.L.S.*, 402 N.E.2d 30 (Ind.Ct.App.1980), as does the majority. Rather, I believe the holding in R.D.S. is still good law and that it stands for the proposition that if the paternity of a child born during the marriage is contested in a dissolution action, the court shall look at the issue of paternity in determining the husband's affirmative obligation of child support. *Id.* at 31.

Furthermore, the majority's claim that Husband in *R.D.S.* "held himself out as the child's father and entered into the marriage with knowledge that he was not the child's father," is directly in dispute with the holding of Judge Shield's majority opinion wherein, after a review of the evidence, she specifically declined to accept the dissenting position that the record reflected evidence of Husband's acknowledgment of the child as his. *Id.* at 35. Thus, I must disagree with the majority's conclusion that "the R.D.S. court rejected as a basis for imposing child support the husband's acknowledgment or equitable adoption of a child he did not father." Instead, I believe the holding indicates that because Husband did not acknowledge or equitably adopt the child, it would have been inequitable to impose upon him an award of child support.

Simply stated, the presumption that a man is the biological father of a child born during his marriage may be rebutted by direct, clear and convincing evidence. *Duke v. Duke*, 185 N.E.2d 478 (Ind.Ct.App.1962). Thus, mere marriage does not automatically impute biological fatherhood to a husband.