669 N.E.2d 197 (1996)
C.J.C., Appellant-Petitioner,
J.A.C., Appellant-Third Party Defendant,
v.
C.B.J., Appellee-Respondent.
No. 08A02-9604-JV-195.
Court of Appeals of Indiana.
August 8, 1996.
Rehearing Denied September 26, 1996.
S. Gregory Howard, Fowler, for appellant.
Florence Briggs, Flora, for third party appellant.
E. Kent Moore, Laszynski & Moore, Cynthia L. Garwood, Lafayette, for appellee.

OPINION
FRIEDLANDER, Judge.
C.J.C. (the child) appeals from a December 15, 1995, order of the trial court dismissing his petition to establish paternity in C.B.J. (the alleged father).
We reverse.
M.A.C. (the mother) married J.A.C. (the husband) on January 8, 1971, and their marriage has remained intact since that date. The mother bore four sons, including the child, during the course of that marriage. The mother had an extramarital affair with the alleged father which resulted in pregnancy and the birth of the child on April 3, 1979. The alleged father did not establish a relationship with the child and never provided any financial support for the child. On the other hand, despite his knowledge that the child was not his biological son, the husband established a relationship with the child and assisted in his support. Pursuant to Ind. Code § 31-6-6.1-9(a)(1), the husband is presumed to be the child's biological father.
On September 1, 1992, the mother filed, on the child's behalf, a petition to establish paternity in the alleged father. The trial court thereafter granted the alleged father's motion to dismiss the petition on the ground that it was not filed by a proper party pursuant to IC § 31-6-6.1-2 and appointed a guardian ad litem to investigate whether it would be in the child's best interest to amend the petition and proceed with the paternity action in the child's own name.
On behalf of the child, the guardian ad litem filed an amended petition in this case, alleging that HLA blood test results excluded the husband as the child's biological father and indicated with a 99.38 percent probability that the alleged father is the child's biological father.
A later HLA blood test ordered by the court confirmed the earlier blood test results. The second blood test excluded the husband as the child's biological father and indicated with a 99.45 percent probability that the alleged father is the child's biological father.
The alleged father filed a third-party complaint against the husband, who had been *198 joined as a party defendant in this case, claiming that the husband was estopped from denying paternity of the child and seeking to have the court find the husband to be the legal father of the child. The husband sought to have the court determine that the alleged father is the legal father of the child.
The alleged father as well as the mother and the husband filed motions for summary judgment with regard to both the amended petition to establish paternity and the third-party complaint.
During the hearing on the motions for summary judgment, counsel for the alleged father admitted that the alleged father was the child's biological father, but argued that, because both the mother and the husband held the husband out to be the child's biological father despite their knowledge to the contrary, they should be estopped from claiming otherwise.
Counsel for the alleged father also argued, among other things, that this case should be dismissed on public policy grounds. He claimed that, where, as here, a child is born during a marriage and the family remains intact, public policy does not favor the maintenance of a paternity action against a third party.
The trial court ruled from the bench that it had been persuaded by the alleged father's public policy argument and granted his motion to dismiss this paternity proceeding. The trial court later entered a written order, which states in pertinent part:
The court hears argument of counsel and now considers the following:
1. Amended Petition to Establish Paternity filed by Guardian Ad Litem with report of Guardian Ad Litem (filed November 6, 1992);
2. [The alleged father's] Answer (filed December 1, 1992);
3. [The alleged father's] Petition for Hearing on report of Guardian Ad Litem (filed June 18, 1993);
4. [The alleged father's] Motion to Join Father as Party Defendant with Affidavit of [the alleged father] attached (filed July 8, 1994);
5. [The alleged father's] Third-[Party] Complaint naming [the husband] (filed August 8, 1994);
6. Third-Party Defendant, [the husband's] Answer to Third-Party Complaint (filed August 19, 1994);
7. [The alleged father's] Motion for Summary Judgment (filed August 2, 1995);
8. [The husband's] and [the mother's] Joint Motion for Summary Judgment (filed October 4, 1995); and
9. All affidavits, reports, attachments and memoranda of law.
The court now determines that the Amended Petition to Establish Paternity fails to state a cause of action and accordingly, the court rules in favor of the [alleged father] on said legal argument. The court now determines that said paternity action shall be dismissed.
Record at 20-21.
On appeal, the child's sole restated issue is:
Where a child is born during the marriage of his mother and her husband and that marriage remains intact, may the child maintain an action to establish paternity in a third party?
IC § 31-6-6.1-2 provides in pertinent part:
(a) A paternity action may be filed by the following persons:
* * * * * *
(4) A child.
A person under the age of eighteen (18) may file a petition if he is competent except for his age. A person who is otherwise incompetent may file a petition through his guardian, guardian ad litem, or next friend.
Despite the above statute, case law suggests that a cause of action may not exist in Indiana to establish paternity where a child is born during the marriage of his mother and her husband and that marriage remains intact. See, e.g., Russell v. Russell, 666 N.E.2d 943, 948-49 (Ind.Ct.App. 1996), where a panel of this court cited IC § 31-6-6.1 et seq. and stated: "No parties may petition to establish paternity of a child born into a marriage, as long as the marriage remains *199 legally intact." The Russell court also stated: "The child and putative father have standing to assert paternity, as long as the marriage is no longer intact." Id. See also In re the Paternity of S.R.I., 602 N.E.2d 1014 (Ind.1992), and K.S. v. R.S., 657 N.E.2d 157 (Ind.Ct.App.1995), vacated, K.S. v. R.S., No. 55S04-9602-CV-00162, 669 N.E.2d 399 (Ind. Jul. 29, 1996).
In re the Paternity of S.R.I. involved a putative father who wanted to establish paternity and assume the legal obligation of supporting a child who was born during the marriage of the child's mother and her husband. The putative father did not seek to establish paternity until after the mother and her husband were divorced. In that case, our supreme court stated in pertinent part:
Under these unusual circumstances, [the putative father] ought to have his day in court and an opportunity to present his evidence. Whether a cause of action would be permitted while the mother's marriage is intact is not presented in this case, and we do not decide that question.
Id. at 1016.
In the K.S. v. R.S. case recently vacated by our supreme court, this court held that no cause of action exists in Indiana where a third party attempts to establish the paternity of a child born during the marriage of the mother and her husband while their marriage remains intact and stated:
Because we are not presented with the issue of whether the child, at an age of competence, may seek to establish paternity in a third party, we will not address that issue. Hopefully, the legislature will clarify the child's standing to bring a paternity action at the age of competence but while the marriage of the mother and presumptive father-husband is still intact.
K.S. v. R.S., 657 N.E.2d at 162 n. 8, vacated, K.S. v. R.S., No. 55S04-9602-CV-00162, 669 N.E.2d 399.
The purpose of the paternity statute is embodied in IC § 31-6-6.1-1.5, which states: "The general assembly favors the public policy of establishing paternity under this chapter of a child born out of wedlock." A child born to a married woman, but fathered by a man other than her husband, is a "child born out of wedlock" for purposes of the paternity statute. K.S. v. R.S., No. 55S04-9602-CV-00162, 669 N.E.2d 399.
In K.S. v. R.S., No. 55S04-9602-CV-00162, 669 N.E.2d 399, our supreme court held that Indiana statutes permit putative fathers to maintain paternity actions even where the mother and the presumptive father-husband remain legally married. We are persuaded by this holding and the stated purpose of the paternity statute that Indiana statutes would permit the child in this case to maintain a paternity action against the alleged father even though the child was born during the marriage of his mother and her husband and their marriage remains intact.
Judgment reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.
KIRSCH and BARTEAU, JJ. concur.