Cynthia Dawn RUSSELL, Appellant
(Respondent below),

v.

Joel K. RUSSELL, Appellee
(Petitioner below).

No. 49S04–9611–CV–705.

Supreme Court of Indiana.

June 27, 1997.

Jackie S. Dodd, Indianapolis, for Appellant.

Alberto Berrones, Franklin, R. Victory Stivers & Associates, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case arises out of the marriage dissolution proceedings of Cynthia Russell (wife) and Joel Russell (husband). Although we agree with the Court of Appeals in the principal matter in dispute in this case—the issue of child custody—we grant transfer to address various additional issues raised by the Court of Appeals.

### Background

The Russells were married in 1987 while wife was three months pregnant with J.R. During the course of their marriage, wife gave birth to three children, including J.R.

On October 29, 1993, husband filed for dissolution of the marriage and gained temporary custody of the children. In early 1994, however, the trial court approved an Agreed Entry of Joint Custody and Visitation providing that the children would spend 3.5 days per week with each parent. Later, on April 15, 1994, wife filed an Emergency Petition for Temporary Custody and Petition to Terminate Visitation, wherein she maintained that husband was physically abusive toward the children. Her petition was denied. On May 5, 1994, wife filed an Emergency Petition for Modification of the 1994 Agreed Entry, again claiming physical abuse of the children and also asserting that husband was not the biological father of J.R. On June 15, the trial court ordered DNA testing, but husband would not comply. On February 3, 1995, husband, under threat of contempt for failure to submit to the DNA testing, and wife signed an Agreed Entry of Paternity stipulating that husband was not the biological father of J.R. The trial court initially approved the Agreed Entry, but

when wife stated that she did not plan to establish paternity in anyone else, the trial court stated that it would vacate it. Before that happened, wife withdrew the 1995 Agreed Entry.

On June 20, 1995, the trial court entered an order granting joint custody of all three children with physical custody going to husband. On June 29, 1995, Thomas Griffith filed a Petition to Establish Paternity with respect to J.R. in juvenile court. On the same day, the trial court issued the Decree of Dissolution.

### Discussion

#### I

Mother contends, and the Court of Appeals agreed, that the trial court abused its discretion in granting physical custody of the children to husband. *Russell v. Russell,* 666 N.E.2d 943, 957 (Ind.Ct.App.1996). We agree with the Court of Appeals with respect to this issue.

■■■ A trial court must make custody determinations in accordance with the best interests of the child. Ind.Code § 31–1–11.5–21 (Supp.1996).[1] The court must consider factors that are relevant, including but not limited to those explicitly listed in the statute. *Id.* Although a court is required to consider all relevant factors in making its determination, it is not required to make specific findings.[2] *In re Marriage of Ford,* 470 N.E.2d 357, 363 (Ind.Ct.App.1984). A trial court's custody determination is reviewable only for an abuse of discretion. *In re Marriage of Richardson,* 622 N.E.2d 178, 179 (Ind.1993); *Matter of Guardianship of Riley,* 597 N.E.2d 995 (Ind.Ct.App.1992). An abuse of discretion occurs where the decision is clearly against the logic and effect of the evidence before the court. *Riley,* 597 N.E.2d at 995.

The Court of Appeals looked at the facts and circumstances that were before the trial court in this case: the court approved psychologist and the guardian *ad litem* both had recommended that wife be granted physical custody; husband had admitted to prior drug use; husband had admitted to having physically abused one child; and Child Protective Services had reprimanded husband for spanking one child with a belt which left bruises on the child's legs. *Russell,* 666 N.E.2d at 957. The Court also stated that there was no evidence that wife should not have been given physical custody. *Id.* Based on these three factors, the Court concluded that the trial court's decision went against the logic and effect of the facts and circumstances presented and ultimately abused its discretion in awarding husband physical custody.

■■■ We agree that based on the evidence presented, the trial court's decision to grant husband physical custody goes against the logic and effect of the facts and circumstances before the trial court. Under Ind. Code § 31–1–11.5–21[3], the trial court was required to consider all relevant factors and make a decision in accordance with the best interests of the children. We find the following factors undoubtedly relevant: husband's prior drug use; prior physical abuse; both the guardian *ad litem's* and psychologist's recommendations that wife should have custody. Because all of these factors strongly favor granting wife custody, it would be in the best interests of the children if wife were granted physical custody.

#### II

■■■ Before the dissolution court may make a child custody or support determination, it must first determine whether it has jurisdiction to do so, *i.e.,* whether the child at issue is a "child of the marriage." The definition of child of the marriage is spelled out

---

1. Pursuant to P.L. 1–1997, Ind.Code § 31–1–11.5–21 is changed to Ind.Code § 31–17–2–8, effective July 1, 1997.

2. The trial court is required to make special findings where a party requests such in writing.

Ind.Trial Rule 52(A); *In re Marriage of Ford,* 470 N.E.2d 357, 363 (Ind.Ct.App.1984), *trans. denied.*

3. Pursuant to P.L. 1–1997, Ind.Code § 31–1–11.5–2(c), is changed to Ind.Code § 31–17–2–8, effective July 1, 1997.

in Ind.Code § 31–1–11.5–2(c) [4]:

> The term 'child' means a child or children of both parties to the marriage and includes children born out of wedlock to the parties as well as children born or adopted during the marriage of the parties.

The Court of Appeals concluded that the trial court had jurisdiction to enter a custody order regarding the children because they were children of the marriage under the Court's reading of Ind.Code § 31–1–11.5–2(c). Because wife contended that husband was not the biological father of J.R., there was a dispute as to whether J.R. was a child of the marriage. The Court of Appeals concluded that J.R. fell within the definition of a child of the marriage, regardless of whether husband or Griffith was J.R.'s biological father. In so concluding, the Court explicitly disagreed with the interpretation given to the statutory definition of "child of the marriage" by two other panels of the Court of Appeals in *R.D.S. v. S.L.S*, 402 N.E.2d 30 (Ind.Ct.App.1980), and *Friar v. Taylor*, 545 N.E.2d 599 (Ind.Ct.App.1989).

In *R.D.S.*, husband and wife met and were married when wife was visibly pregnant with R.M.S. Wife gave birth to R.M.S. while she and husband were married. Wife later filed a petition for dissolution, which the trial court granted. It was undisputed that husband was not the biological father of R.M.S. The trial court ordered husband to pay child support. The Court of Appeals concluded that husband could not be ordered to pay child support because the trial court had erred in determining that the child was a child born of the marriage since a "child must be a child of both parties to fall within the clear meaning of the statute." *R.D.S.*, 402 N.E.2d at 34. Because husband neither fathered nor adopted R.M.S., R.M.S. was not a child under Ind.Code § 31–1–11.5–2(c). The Court maintained that the statute itself as well as legislative intent indicated that a child must be a biological child or adopted child of *both* parents.[5] *Id.*

Similarly, in *Friar v. Taylor*, 545 N.E.2d 599 (Ind.Ct.App.1989), the Court of Appeals concluded that the dissolution court lacked jurisdiction to determine custody of two children conceived and born during the marriage but whose biological father was not the husband.

In contrast, here the Court of Appeals reads Ind.Code § 31–1–11.5–2(c) to mean that even where the husband is not the child's biological father, a child born during the marriage is nevertheless a child of the marriage solely by virtue of being born during the marriage. *Russell*, 666 N.E.2d at 953.

We are thus faced with a conflict between the Court of Appeals' interpretation of the definition of "child" in *R.D.S.* and *Friar* and in this case.[6] As a matter of grammar, we conclude that the *R.D.S.* and *Friar* decisions are correct. *Foremost Life Ins. Co. v.Dept. of Ins.*, 274 Ind. 181, 409 N.E.2d 1092, 1096

---

4. Pursuant to P.L. 1–1997, Ind.Code § 31–1–11.5–2(c), is changed to Ind.Code § 31–9–2–13(a), effective July 1, 1997.

5. The court in *R.D.S.* referred to the comments to the Proposed Dissolution of Marriage Act, section 104(c), which defined the term child as it is now defined in Ind.Code § 31–1–11.52(c). The comments read: "For the purposes of this Act all children born of the parties to the marriage are included. Thus an illegitimate child may obtain support, under this Act, if his father subsequently marries his mother." 402 N.E.2d at 34. This language supports the contention that the part of the definition of child stating that the definition includes "children born out of wedlock to the parties as well as children born or adopted during the marriage of the parties" is meant simply to be a clarification that if a father subsequently marries the mother, the child will be a child of the marriage.

6. We have been presented with an opportunity to interpret this statute in the past. In *State ex rel. McCarroll v. Marion County Superior Court*, 515 N.E.2d 1124 (Ind.1987), we concluded that a child born out of wedlock who was neither fathered nor adopted by wife's husband did not fall under the statutory definition of child of the marriage. In so holding, we cited the *R.D.S.* case with approval. 515 N.E.2d at 1125.

The Court of Appeals found *McCarroll* distinguishable from this case in that in *McCarroll*, wife gave birth to the child prior to her marriage to husband; here, the child was born during the marriage of husband and wife. Although the Court of Appeals points out an accurate distinction, we do not think it makes a difference for purposes of determining whether J.R. meets the statutory definition of "child." Even though born after the marriage, J.R. is not a child of *both* parties.

(1980); *Evansville v. Zirkelbach,* 662 N.E.2d 651, 653 (Ind.Ct.App.1996), *trans. denied* (in determining legislative intent, it is appropriate to look at grammatical structure of language in statute).  Applying rules of parallel construction, we conclude that the legislature meant to define a single jurisdictional category, children of *both* parties, and clarified this definition by explaining that it does not matter whether such children are born before or after the parties are married.  The definition of "child" contains a phrase and two clauses: (i) "a child or children of both parties to the marriage;" (ii) "children born out of wedlock to the parties;" and (iii) "children born or adopted during the marriage of the parties." Here the legislature used the compound subject, "child or children," in the phrase but only the single subject, "children," in the two clauses; the clauses are parallel to each other.  If the legislature had intended to create two separate jurisdictional categories, children of both parties and children born during the marriage, as the Court of Appeals concluded in this case, we believe the legislature would have made the phrase and second clause parallel to each other by using the same subject in the first and third clauses of the sentence.  *See General Serv. Emp. Union Local No. 73 v. N.L.R.B.,* 578 F.2d 361, 368 (D.C.Cir.1978) (court looked at parallel structure of statute to determine its meaning).  *See also Heaslip v. Freeman,* 511 N.W.2d 21, 23 (Minn.Ct.App.1994), *review de-*nied ("The factor that tips the balance and makes it more likely that the words. create only two types of privilege rather than three is the parallel construction of two of the elements....").

We, like the Court of Appeals panels in *R.D.S.* and *Friar,* read the statute to say that this one group *includes* children born out of wedlock as well as children born or adopted during the marriage—as long as both parties are the natural parents (or adopted the child).[7]

### III

The inquiry into whether a child is a child of the marriage is a determination by the dissolution court of who the child's parents are for purposes of custody, visitation and support.  *See generally* Ind.Code § 31–1–11.5–2 (definition of child);[8] §§ 31–1–11.5–12 through 15 (support);[9] §§ 31–1–11.5–20 through 23 (custody);[10] §§ 31–1–11.5–24 through 26 (visitation).[11]  In paternity proceedings, the inquiry is whether a particular man is the child's biological father.  Ind.Code §§ 31–6–6.1–1 through 10.[12]  If so, similar determinations as to support, custody and visitation are made.  *See generally* Ind. Code §§ 31–6–6.1–10 through 16.[13]

The Court of Appeals in this case took the position that because Ind.Code § 31–6–2–1.1(a)(3) provides that the juvenile court has "exclusive original jurisdiction" in "proceed-

7.  We appreciate the Court of Appeals' concern for a man who may be deprived of parental rights that he assumed for many years and wishes to retain even though he is not the child's biological father.  However, a countering important policy concern is identifying correctly parents and their offspring.  "Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons.  It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father."  *In re S.R.I.,* 602 N.E.2d 1014, 1016 (Ind. 1992).  In the end, such policy choices are the province of the legislature.  Also, a husband who is not the biological father of his wife's child may pursue legally adopting the child, bringing such child within the statutory definition of "child."

8.  Pursuant to P.L. 1–1997, Ind.Code § 31–1–11.5–2, is changed to Ind.Code § 31–9–2–13, effective July 1, 1997.

9.  Pursuant to P.L. 1–1997, Ind.Code §§ 31–1–11.5–12 through 15 are change to Ind.Code §§ 31–16–1 through 20, effective July 1, 1997.

10.  Pursuant to P.L. 1–1997, Ind.Code §§ 31–1.11.5–20 through 23, are changed to Ind.Code §§ 31–17–1 through 3, effective July 1, 1997.

11.  Pursuant to P.L. 1–1997, Ind.Code §§ 31–1–11.5–24 through 26, are changed to §§ 31–17–4 through 6, effective July 1, 1997.

12.  Pursuant to P.L. 1–1997, Ind.Code §§ 31–6–6.1–1 through 10, are changed to Ind.Code §§ 31–14–1 through 9, effective July 1, 1997.

13.  Pursuant to P.L. 1–1997, Ind.Code §§ 31–6–6.1–10 through 16, are changed to Ind.Code §§ 31–14–10 through 21, effective July 1, 1997.

ings concerning the paternity of a child," the dissolution court may not make a determination of paternity. *Russell,* 666 N.E.2d at 948. As a corollary to this principle, the Court of Appeals concluded that a factual determination by the dissolution court that a child is a child of the marriage does not establish paternity or non-paternity. *Id.* at 949. In its analysis, the Court extensively criticized another Court of Appeals opinion, *L.D.H. v. K.A.H.,* 665 N.E.2d 43, 48 (Ind.Ct. App.1996), which held that a dissolution court and juvenile court have concurrent jurisdiction over the issue of paternity.

▇▇▇ We agree with the Court of Appeals to a certain extent. A determination as to whether a child is a child of the marriage in a dissolution proceeding is not necessarily a determination that the divorcing husband is the biological father of the child. However, there are some circumstances in which a determination in a dissolution proceeding as to whether a child is a child of the marriage is equivalent to a paternity determination, i.e., determination that the divorcing husband is or is not the child's biological father.

We decline to give this subject extensive treatment, both because it is unnecessary to the central issue on appeal here—custody—and because the law in this area is likely to change dramatically in the very near future in the wake of federal and state welfare reform. Paul K. Legler, "The Coming Revolution in Child Support Policy: Implications of the 1996 Welfare Act," 30 Fam.L.Q. 519, 527–538 (1996).[14] However, we do present some broad considerations.

▇▇▇ In many cases, the parties to the dissolution will stipulate or otherwise explicitly or implicitly agree that the child is a child of the marriage. In such cases, although the dissolution court does not identify the child's biological father, the determination is the legal equivalent of a paternity determination in the sense that the parties to the dissolution—the divorcing husband and wife—will be precluded from later challenging that determination, except in extraordinary circumstances. *See Fairrow v. Fairrow,* 559 N.E.2d 597, 600 (Ind.1990) (husband

entitled to relief from support judgment only in event that "the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action."). However, a child or a putative father is not precluded by the dissolution court's finding from filing a separate action in juvenile court to establish paternity at a later time. *See J.W.L. by J.L.M v. A.J.P.,* 682 N.E.2d 519 (Ind.1997) (child); *K.S. v. R.S.,* 669 N.E.2d 399 (Ind.1996) (putative father); *In re S.R.I.,* 602 N.E.2d 1014 (Ind.1992) (putative father).

▇▇▇ In other cases, the issue of whether a child is a child of the marriage may be vigorously contested. In such cases, the dissolution court has the authority to follow appropriate procedures for making paternity determinations. *See Cooper v. Cooper,* 608 N.E.2d 1386 (Ind.Ct.App.1993) (dissolution court has authority to order blood testing during dissolution proceeding to determine biological father). When a dissolution court makes its determination as to whether the child is or is not a child of the marriage under such circumstances and based upon and consistent with the results of the blood or genetic testing, such a determination, (i) in addition to having the preclusive effect on the divorcing husband and wife described in the preceding paragraph, (ii) will constitute a determination in all but the most extraordinary circumstances that the divorcing husband is or is not the biological father of the child, precluding a child, putative father, or other person from challenging that determination in subsequent or collateral proceedings.

▇▇▇ There will also be cases like the one before us where the divorcing husband and wife will attempt to stipulate or otherwise agree that a child is not a child of the marriage. While we disagree with the Court of Appeals when it says that a dissolution court is without jurisdiction to approve such agreements, we certainly believe that it is well within the discretion of the trial court to withhold approval until paternity has been established in another man. *See In re Marriage of K.E.V.,* 883 P.2d 1246 (Mont.1994) (court applied equitable estoppel to prevent

---

14. Indiana has begun implementation of the 1996 Welfare Act. *See,* e.g., P.L. 257–1997(ss).

mother from denying paternity of husband where mother was not seeking to establish paternity in another man; court reiterated that the holding would not bar biological father or child from establishing paternity in father). In this regard, we generally agree with the Court of Appeals in this case in concluding that *L.D.H.* was wrongly decided, at least to the extent that *L.D.H.* stands for the proposition that paternity actions filed in juvenile court collateral to pending dissolution actions are always improper. In fact, such actions may be the only way in which to establish the paternity of a man other than divorcing husband so as to satisfy the dissolution court that the child is not a child of the marriage and permit the divorce to proceed.[15]

## IV

Finally, we wish to clarify another principle espoused by the Court of Appeals in dicta: that a party may not file a paternity action to determine the paternity of a child born during a marriage as long as that marriage remains intact. *Russell,* 666 N.E.2d at 949. Subsequent to the Court of Appeals decision in this case, we held to the contrary. *K.S. v. R.S.,* 669 N.E.2d 399 (Ind.1996) (holding that Indiana law permits a man who claims to be the biological father of a child born during the marriage of the child's mother and another man to file a paternity action while that marriage remains intact). *See also C.J.C. v. C.B.J.,* 669 N.E.2d 197 (Ind.Ct. App.1996), *trans. denied.* Mother's divorce need not precede Griffith's filing of a paternity action.

### Conclusion

We grant transfer, vacate the decision of the Court of Appeals in its entirety, and remand this cause to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

15. Family courts, in which jurisdiction over both dissolution and paternity proceedings would be authorized, might diminish the difficulties of this bifurcated approach. *See* Randall T. Shepard, "State of the Judiciary 1997, Trying Something New," 40 *Res Gestae* 12–17 (March 1997).