JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, William Franklin, Jr., appeals the judgment of the Cuyahoga County Court of Common Pleas, rendered after a bench trial, finding him guilty of receiving stolen property, in violation of R.C. 2913.51, and failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, and sentencing him to one year of community control sanctions. For the reasons that follow, we affirm.
 {¶ 2} The record reflects that appellant's case was called for trial on April 16, 2002. On that date, before trial, appellant appeared in open court and acknowledged to the trial judge that at a previous time and not in open court, he had signed a written jury waiver. At the trial judge's request, defense counsel showed appellant the form that he had signed, and appellant acknowledged his signature on the form. Appellant then acknowledged that he understood that he was waiving his constitutional right to trial by a jury. Upon a finding by the trial judge that appellant had knowingly and intelligently waived his right to jury, the case immediately proceeded to a bench trial.
 {¶ 3} In his first assignment of error, appellant contends that the trial court lacked jurisdiction to proceed to trial without a jury because appellant did not sign the jury waiver form in open court, the written jury waiver was not filed with the Clerk of Courts office prior to the commencement of trial and, further, was not filed until after the trial concluded.
 {¶ 4} Appellant apparently challenges the trial court's exercise of its jurisdiction, rather than its subject matter jurisdiction over his case in the first instance. The Ohio Supreme Court has recognized that the term "jurisdiction" encompasses three distinct concepts: 1) subject matter jurisdiction; 2) jurisdiction over the person; and 3) jurisdiction over the particular case. State v. Parker, 95 Ohio St.3d 524,2002-Ohio-2833, at ¶ 22 (Cook, J., dissenting), citing State v.Swiger (1998), 125 Ohio App.3d 456, 462. "The third category of jurisdiction encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. * * * Where it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present. Any subsequent error in the proceedings is only error in the `exercise of jurisdiction,' as distinguished from the want of jurisdiction in the first instance."Swiger, 125 Ohio App.3d at 462-463. When a trial court lacks subject matter jurisdiction its judgment is void; lack of jurisdiction of the particular case merely renders the judgment voidable. Id., citing Russellv. Russell (Ind.App. 1996), 666 N.E.2d 943, 952, vacated on other grounds, 682 N.E.2d 513.
 {¶ 5} In State v. Pless (1996), 74 Ohio St.3d 333, the Ohio Supreme Court implicitly recognized that cases involving the jury trial waiver requirements of R.C. 2945.05 involve something other than subject matter jurisdiction. In Pless, the Supreme Court reversed a capital conviction based on the absence in the record of a written jury trial waiver as required by R.C. 2945.05. The Pless majority held that "a trial court lacks jurisdiction to try the defendant without a jury" absent strict compliance with R.C. 2945.05. Id. at paragraph one of the syllabus. In the next paragraph of the syllabus, however, the majority held that this jurisdictional defect may be raised only on direct appeal. Id. at paragraph two of the syllabus. These two paragraphs are subject to only one interpretation:
 {¶ 6} "If the `jurisdiction to which the [Pless] court referred were subject matter jurisdiction, by its very nature, it would be open to challenge at any time. By holding that this defect in the trial court's `jurisdiction' can be waived if not timely raised, the Supreme Court was apparently referring to something other than subject matter jurisdiction."Parker, ¶ 25, quoting Swiger, 125 Ohio App.3d at 464-465.
 {¶ 7} Thus, any defect in applying the Pless requirements is a defect in the trial court's exercise of its jurisdiction and not a lack of subject matter jurisdiction in the first instance. Consequently, if a trial court acts beyond its statutory authority by trying a defendant without complying with the jury waiver requirements of R.C. 2945.05, that defendant's conviction may be voidable, but it is not void ab initio for lack of subject matter jurisdiction.
 {¶ 8} Crim.R. 23(A) provides that a criminal defendant may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. See, also, State v. Bays (1999), 87 Ohio St.3d 15, 19, citing State v. Ruppert (1978), 54 Ohio St.2d 263, 271. The manner in which a defendant may effect such a waiver is governed by R.C. 2945.05, which provides, in relevant part:
 {¶ 9} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. * * *
 {¶ 10} "Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has opporunity to consult with counsel."
 {¶ 11} Thus, R.C. 2945.05 requires that a jury waiver be in writing, signed by the defendant and filed in the case and made a part of the record. Absent strict compliance with these requirements, a trial court lacks jurisdiction to try the defendant without a jury. Pless,
74 Ohio St.3d at paragraph one of the syllabus.
 {¶ 12} Appellant initially complains that the jury waiver was not signed in open court. Crim.R. 23(A) and R.C. 2945.05 are satisfied when, after arraignment and opportunity to consult with counsel, defendant signs a written statement affirming that he or she knowingly and voluntarily waives his or her constitutional right to a trial by jury and the court reaffirms this waiver in open court. State v. Ford, Cuyahoga App. Nos. 79441 and 79442, 2002-Ohio-1100, citing State v. Walker (1993),90 Ohio App.3d 352, 358.
 {¶ 13} It is not necessary that the waiver be signed in open court to be valid. Id. What the statute requires is that the trial court engage in a colloquy with the defendant such that the judge can make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right. Id.
 {¶ 14} Here, the record reflects that the trial judge asked defense counsel to show appellant the signed jury waiver and then asked appellant whether that was his signature on the form. After appellant acknowledged his signature, the trial judge asked him whether he understood that he was entitled to a trial by jury and that by signing the form, he was waiving that right. Upon appellant's affirmative response, the trial judge concluded that appellant had knowingly and intelligently waived his right to a jury trial. We find this colloquy sufficient to satisfy the statute's open-court requirement.
 {¶ 15} Appellant also asserts that the trial court lacked jurisdiction because the signed jury waiver was not filed prior to the commencement of trial and, in fact, was filed after trial concluded. As this court has repeatedly made clear, however, strict compliance with R.C. 2945.05 is met upon filing the jury waiver; there is no rule pertaining to when the filing must occur. State v. McKinney, Cuyahoga App. No. 80991, 2002-Ohio-7249, citing State v. Sekera, Cuyahoga App. No. 80690, 2002-Ohio-5972. Thus, as this court stated in State v. Antonic
(Nov. 22, 2000), Cuyahoga App. No. 77678:
 {¶ 16} "R.C. 2945.05 only requires that the waiver occur before trial and that the waiver is filed, time-stamped and contained in the record. See State v. Pless (1996), 74 Ohio St.3d 333; State v. Gipson
(1998), 80 Ohio St.3d 626. There is no requirement that the waiver befiled and placed in the record before trial. See State v. Jones (Feb. 5, 1999), Hamilton App. No. C-980270." (Emphasis added.)
 {¶ 17} Similarly, in Sekera, supra, this court stated, "According to Pless, strict compliance with R.C. 2945.05 is met upon the filing of the waiver; Pless makes no rule pertaining to when the filing occurs. * * * The fact that the waiver was not journalized until after the trial concluded is not fatal."
 {¶ 18} Here, the record reflects that appellant signed two jury waiver forms. The first was signed and filed on March 6, 2002, the original trial date.[1] The second was signed and filed on April 16, 2002, the actual day of trial. Thus, appellant's argument that no written jury waiver had been filed prior to trial on April 16, 2002 is wrong — the first form, signed on March 6, 2002, was already in the file when trial began on April 16, 2002.
 {¶ 19} Even disregarding that form, however, the record reflects that the second signed jury waiver form was filed sometime on April 16, during the first day of trial. The judge continued hearing testimony on April 17 and rendered her verdict on April 18. Thus, contrary to appellant's argument, the jury waiver form was filed, time-stamped and contained in the record before trial concluded. It is apparent that the jury waiver in this case met the requirements of R.C. 2945.05 and, accordingly, the trial court had jurisdiction to conduct a bench trial.
 {¶ 20} Appellant's first assignment of error is therefore overruled.
 {¶ 21} Appellant's second and third assignments of error challenge the sufficiency and weight of the evidence supporting his conviction for failure to comply with the order or signal of a police officer.
 {¶ 22} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Thompkins, supra. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 24} Because sufficient evidence is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v.Combs (Sept. 12, 2001), Medina App. No. 3139-M, citing State v. Roberts
(Sept. 17, 1997), Lorain App. No. 96CA006462.
 {¶ 25} Appellant was convicted of violating R.C. 2921.331(B), failing to comply with a signal or order of a police officer, with a furthermore clause that appellant's operation of his motor vehicle caused a substantial risk of serious physical harm to persons or property. This clause enhanced the offense from a first-degree misdemeanor to a felony of the third degree.
 {¶ 26} R.C. 2921.331(B) provides:
 {¶ 27} "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 28} Appellant contends that his conviction was against the manifest weight of the evidence because there was insufficient evidence of "a visible or audible signal from a police officer" requiring him to stop the car. According to appellant, pursuant to R.C. 4511.45, he was only required to stop his vehicle if the approaching police car was within five-hundred feet of his car. Appellant asserts that because there was no testimony that the police car chasing him ever got within five-hundred feet of him, his conviction was against the manifest weight of the evidence. Appellant's reliance on R.C. 4511.45, however, is misplaced.
 {¶ 29} R.C. 4511.45, Right-of-Way of Public Safety or Coroner's Vehicle, provides, in pertinent part:
 {¶ 30} "Upon the approach of a public safety vehicle or coroner's vehicle, equipped with at least one flashing, rotating or oscillating light visible under normal atmospheric conditions from a distance of five-hundred feet to the front of the vehicle and the driver is giving an audible signal by siren, exhaust whistle, or bell, no driver of any othervehicle shall fail to yield the right-of-way, immediately drive to a position parallel to, and as close as possible to, the right edge or curb of the highway clear of any intersection, and stop and remain in that position until the public safety vehicle or coroner's vehicle has passed, except when otherwise directed by a police officer." (Emphasis added.)
 {¶ 31} This statute is not related in any way to R.C. 2921.331. It does not address the obligation of an individual to stop his or her car when lawfully ordered to do so by a police officer; it pertains to the duty of an individual to yield the right-of-way to a public safety vehicle by pulling his or her vehicle to the side of the road to let the emergency vehicle pass.
 {¶ 32} Moreover, although R.C. 4511.45 specifies that an individual need pull over only when the emergency vehicle is within five-hundred feet of that individual's car, R.C. 2921.331(B) requires only that an individual not operate his or her motor vehicle in an effort to flee "after receiving a visible or audible signal" from a police officer. There is no requirement in R.C. 2921.331(B) that the police officer giving the signal be within five-hundred feet of the individual's car.
 {¶ 33} At trial, Cleveland police officer Ariel Rojas testified that early in the morning of January 16, 2001, he and his partner heard a radio dispatch describing a vehicle that had been stolen late on the evening of January 15. According to Rojas, as he and his partner were traveling east on St. Clair at approximately 1:00 a.m. on January 16, 2001, they observed a car matching the description of the stolen vehicle pass them, heading west on St. Clair. When Rojas made a U-turn to follow the vehicle, the driver of the stolen vehicle immediately turned the car's headlights off and began accelerating. Rojas observed one occupant in the car.
 {¶ 34} The vehicle turned northbound on East 20th and the police car followed. According to Rojas, the vehicle kept accelerating "at a high rate of speed." Rojas testified that when he turned onto East 20th, he and his partner could not see the vehicle but as they approached Hamilton Court, which is an alley, they observed smoke and debris "just flying in the air," and then saw the vehicle traveling eastbound on Hamilton Court. According to Rojas, he turned eastbound onto Hamilton Court, activated the police car's overhead lights and siren and began pursuing the vehicle again. Rojas estimated that he was "a block, block and a half" away from the stolen car when he activated the lights and siren.
 {¶ 35} Rojas testified that he could see the stolen vehicle traveling erratically down the alley and saw it go airborne and then "bottom out" as it "completely blew through" the intersection at East 24th Street. Rojas testified further that he kept the overhead lights and siren on as he and his partner chased the stolen vehicle down Hamilton Court and onto East 26th Street.
 {¶ 36} According to Rojas, he and his partner lost sight of the car for three to five seconds when it turned onto East 26th Street but, as the police car made the turn, the officers saw the stolen vehicle hit some railroad tracks in the road and then go airborne over an embankment. As the police car came over the embankment, Rojas and his partner saw the stolen car stopped, crashed into a guardrail, with the driver's door open. No one was in the car.
 {¶ 37} Officer James Skernivitz, Rojas' partner that morning, testified that when he and Rojas saw a car that matched the earlier-broadcast description of the stolen vehicle traveling westbound on St. Clair, they made a U-turn and attempted to catch up with the vehicle. Skernivitz testified further that when they made the U-turn, the driver of the stolen vehicle immediately turned off its lights and accelerated. According to Skernivitz, the vehicle accelerated even more as the officers chased it down Hamilton Court.
 {¶ 38} Approximately thirty minutes after Officers Rojas and Skernivitz found the vehicle crashed into a guardrail, police officers searching the area discovered appellant lying facedown in three to four foot high weeds, approximately fifty feet away from the abandoned car.
 {¶ 39} In light of this testimony, we do not find appellant's conviction for failure to comply with the order or signal of a police officer against the manifest weight of the evidence. The evidence was sufficient to establish that appellant received a visible and audible signal to stop the car he was driving but chose to attempt to elude the police, in violation of R.C. 2921.331.
 {¶ 40} Officer Rojas testified that he turned on the car's overhead lights and siren when he and Skernivitz turned down Hamilton Court in pursuit of appellant. Although Rojas testified that the police car was approximately one block away from the vehicle when he turned on the overhead lights and siren, he also testified that he could see the vehicle as it drove erratically down Hamilton Court, the police car in pursuit. Officer Skernivitz testified that as the officers pursued the vehicle down Hamilton Court, it accelerated even more. Moreover, both Rojas and Skernivitz testified that the vehicle they were pursuing "blew through" the intersection of Hamilton Court and East 24th Street, traveling at such a high rate of speed that it became slightly airborne as it went through the intersection.
 {¶ 41} From this testimony, it was reasonable for the judge to conclude that appellant could see the police car, with its lights on and siren blaring, as it chased him as he drove the stolen vehicle down Hamilton Court and East 26th Street, but that he chose to attempt to elude the police, driving in a manner that caused a substantial risk of serious physical harm to persons or property. Thus, the judge did not lose her way and create such a miscarriage of justice that the conviction must be reversed.
 {¶ 42} Because we find that appellant's conviction was not against the manifest weight of the evidence, appellant's assertion that the State did not produce sufficient evidence to support a conviction is also without merit. Accordingly, appellant's second and third assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J. and JAMES J. SWEENEY, J. concur.
[1] The record reflects that trial was continued to March 20, 2002 and then to April 16, 2002 at the request of defense counsel.