## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 24 2015, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| William W. Gooden | Jean E. Hadley |
| Mt. Vernon, Indiana | New Harmony, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.D.,<br>*Appellant-Defendant,*<br><br>v.<br><br>K.D.,<br>*Appellee-Plaintiff* | September 24, 2015<br><br>Court of Appeals Case No.<br>65A01-1502-DR-67<br><br>Appeal from the Posey Circuit Court<br><br>The Honorable James M. Redwine, Judge<br><br>Trial Court Cause No.<br>65C01-1402-DR-89 |

**Altice, Judge.**

### Case Summary

[1] Less than three months after her birth, M.D. was adjudicated a CHINS and placed in foster care. Shortly thereafter, Mother filed for dissolution of her

marriage to Father. The parties contested the issue of custody, and the trial court granted sole physical and legal custody to Mother with Father having supervised parenting time. On appeal, Father contends that he should have been granted custody because Mother's neglect resulted in the CHINS adjudication.

[2] We affirm.

## Facts & Procedural History

[3] Mother and Father were married on July 13, 2012. They separated shortly before M.D.'s birth, November 9, 2013, and remained separated thereafter. M.D. was the only child of the marriage. Mother, however, had another child, A.R., who was about two years older than M.D. and of whom Mother had full custody. Following her birth, Father provided no care or support for M.D. Mother was her sole caretaker.

[4] Mother took M.D. for her one-month doctor visit on December 9, 2013. The baby weighed seven pounds and nine ounces at the time. Thereafter, M.D. began vomiting on a regular basis and not holding down food. Mother spoke with the doctor during a visit later that month for A.R., at which M.D. was present, and the doctor indicated that it was probably just an illness that would pass. Mother called the doctor's office several more times, but kept getting the same response. Due to bad weather, Mother rescheduled M.D.'s two-month checkup. Mother brought M.D. in for a sick visit on January 21, 2014, due to the continued and progressively worse vomiting. At that time, the doctor

discovered that M.D. weighed only five pounds and eleven ounces. The doctor directed Mother to go to the emergency room with M.D. There she was found to be malnourished, dehydrated, and near death. Later that night, the hospital determined that M.D. had a birth defect that was causing the projectile vomiting and failure to thrive.

[5] As a result of M.D.'s serious medical condition, she was adjudicated a CHINS and placed in foster care. Criminal neglect charges were also brought against Mother. A.R. remained in Mother's care. Thereafter, on February 25, 2014, Mother filed for dissolution of marriage.

[6] During the CHINS matter, Mother fully cooperated with services and, according to Family Case Manager (FCM) Davita Hubbard, made "very good progress" over the year. *Transcript* at 69. FCM Hubbard testified that Mother "has done everything that I have asked her to do." *Id*. at 83. At the time of the final hearing in this dissolution case, Mother had unsupervised visitation with M.D. every weekend and the case plan was reunification with Mother, with a trial home visit beginning within the next six weeks.

[7] Father, on the other hand, never took advantage of the services offered, and he visited M.D. only once in the year preceding the final hearing. FCM Hubbard testified that Father historically did not follow through with scheduled visits. She further noted that Father had at least four other children, none of whom were in his custody. Father's parental rights had been terminated with respect to two of his children, his grandmother had guardianship of another, and the

fourth lived out of state with the child's mother. At the final hearing, Father testified that he had been homeless and living in a shelter for the last several months and only recently obtained employment. Father has previously served time in prison for home invasion and domestic battery.

[8] FCM Hubbard testified that she would be "very concerned" if Father obtained custody of M.D. *Id.* at 74. Despite many opportunities, Father had not established "a pattern where he can commit to raising a child." *Id.* at 90. FCM Hubbard recommended that the trial court grant custody to Mother and supervised parenting time to Father.

[9] At the conclusion of the final hearing on January 23, 2015, the trial court granted Mother both legal and physical custody of M.D. The court ordered supervised parenting time for Father.

## Discussion & Decision

[10] On appeal, Father argues that the trial court abused its discretion by granting custody of M.D. to Mother. He focuses on the circumstances leading up to the CHINS adjudication and the fact that the infant was in Mother's care at that time. Accordingly, Father asserts, "[b]ecause of Mother's neglect or inattention to M.D.'s severe weight loss custody should have been granted to Father." *Appellant's Brief* at 4.

A court must make custody determinations in accordance with the best interests of the child. Ind. Code § 31-17-2-2. In doing so, the court is required to

consider relevant factors, including but not limited to those explicitly listed in the statute. *Id*. The trial court is not required to enter specific findings. *Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997). Further, its custody determination is reviewable only for an abuse of discretion. *Id*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the evidence before the court. *Id.* On review, we will consider only the evidence favorable to the judgment, without reweighing the evidence or assessing witness credibility. *Francies v. Francies*, 759 N.E.2d 1106, 1115 (Ind. Ct. App. 2001), *trans. denied*.

[11] We reject Father's blatant invitation to reweigh the evidence. While Mother certainly made mistakes during M.D.'s early infancy, the record reveals that she has consistently worked with service providers to learn how to properly care for M.D. with her birth defect and possible other medical issues. According to FCM Hubbard, who had worked with the family for about a year, Mother had made "very good progress" and was ready to begin her trial home visit shortly after the final hearing in the instant case. *Transcript* at 69. Father, on the other hand, had made no progress in this regard and had visited M.D. only a couple of times since birth.

[12] The trial court's custody order is amply supported by the record. Accordingly, we find no abuse of discretion.

[13] Judgment affirmed.

Riley, J., and Brown, J., concur.