

FILED

Oct 16 2025, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-MI-34

## Jennifer O'Connell,
*Appellant (Respondent below)*

–v–

## Donna Clay,
*Appellee (Petitioner below)*

Argued: April 24, 2025 | Decided: October 16, 2025

Appeal from the Porter Superior Court
No. 64D02-1807-MI-6597
The Honorable Mark A. Hardwick, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-MI-129

**Opinion by Justice Goff**

Chief Justice Rush and Justice Massa concur.
Justice Molter concurs in part and in the judgment with separate opinion in
which Justice Slaughter joins.

**Goff, Justice.**

The Grandparent Visitation Act (or GVA) allows a paternal grandparent to petition for visitation with their grandchild if the "child was born out of wedlock," but only if the child's father has "established paternity in relation to the child."[1] The question here is whether a custodial mother's stipulations to the father's paternity in an agreed visitation order preclude her from asserting otherwise in an effort to dismiss that order. In line with well-established principles of equitable estoppel, we answer that question in the affirmative. We thus affirm the trial court and hold that the grandmother here had standing under the GVA to petition for visitation with her grandchild.

## Facts and Procedural History

Jennifer O'Connell (Mother) and Jeffrey Clemens (Father), an unwed couple, gave birth to a baby girl (the Child) in July 2013. Father's name was never listed on the birth certificate, and he died about a year and a half after Child's birth. After Father died, Child's paternal grandmother, Donna Clay (Grandmother), maintained a presence in Child's life and helped Mother with expenses. In July 2018, Grandmother petitioned the trial court for visitation and to establish Father's paternity.[2] Her petition included an attached "Personal Paternity Analysis Report" from a purported DNA test, indicating an extremely high likelihood that Father was the biological father of the Child. After a hearing on that petition in September (for which we have no available transcript), Mother and Grandmother, both represented by counsel, filed a proposed "Agreed Order" with the court. App. Vol. 2, pp. 5, 24–27. Under that filing, the parties set forth a mutually approved visitation schedule and Mother (1) agreed to change Child's surname to "O'Connell-Clemens," (2) agreed to

---

[1] Ind. Code §§ 31-17-5-1(a)(3), (b).

[2] Grandmother had filed a similar petition in February 2018, which she successfully moved to dismiss after the trial court declined to transfer the case to the juvenile court.

add Father's name to Child's birth certificate, and (3) acknowledged "in open Court and on the record" that Father was Child's father. *Id.* at 24–26. The trial court approved the Agreed Order, binding the parties to its terms.

Problems arose within a couple months of the court approving the Agreed Order. In late November 2018, Mother moved to cease visitation, alleging Grandmother's neglect of the Child, her failure to exercise certain rights under the order, and her failure to report an alleged incident of sexual misconduct between the Child and another grandchild during a visit. Grandmother, in turn, filed two motions for contempt in which she denied Mother's allegations, charged Mother herself with the Child's neglect, and accused her of violating the visitation schedule. After a hearing at which the parties testified and presented other evidence, the trial court kept the Agreed Order in place (with minor scheduling modifications) and found Mother in contempt for failing to comply with the visitation schedule.

Several years later, on February 23, 2022, Grandmother petitioned for custody of the Child and for the appointment of a guardian ad litem (or GAL), alleging Mother's ongoing violation of the Agreed Order and continued neglect of the Child. In response, Mother filed a petition for modification of visitation on May 11, 2022. The trial court scheduled a hearing to address both petitions but, the following month, granted Mother's motion for a continuance, directing the parties to reschedule the hearing at a future date. On August 1 of that year, the trial court issued its order appointing the GAL, clarifying her scope of services to include a "Custodial Recommendation" and asking her to address "Visitation Issues." *Id.* at 60. After nearly a year of periodic status conferences, motions to withdraw appearances, a ruling on Grandmother's emergency petition for an injunction (setting forth certain conditions for Mother and Child's spring-break trip to Florida), and other scheduling activity, the trial court issued its order for a "Final Hearing in this matter" to be held on October 16, 2023. *Id.* at 9–12, 73.

At the final hearing itself, the court-appointed GAL recommended joint legal custody, with Grandmother having primary physical custody. Tr.

Vol. 2, pp. 27, 28. Unsure of whether it could comply with this recommendation, the trial court asked the parties to brief the custody issue. Grandmother filed the requested briefing. But Mother filed a Trial Rule 12(B)(6) motion to dismiss the petition for visitation, arguing that Grandmother lacked standing to file that petition in the first place, rendering void the Agreed Order and all subsequent related orders from the trial court. App. Vol. 2, pp. 78–80.

In an order issued from the October 16 hearing (the Post-Hearing Order), the trial court denied Mother's motion to dismiss, concluding that, while she could have argued lack of standing when Grandmother filed her original petition, Mother instead stipulated to the Agreed Order, thus waiving any claim that the court lacked the authority to order visitation. Finally, the court concluded that, in the absence of express statutory authority, it could not comply with the GAL's custody recommendation, even if it were in the Child's best interest.

In a memorandum decision, the Court of Appeals reversed, holding that Grandmother lacked standing under the GVA because Child was born out of wedlock and Father's paternity was never established. *O'Connell v. Clay*, No. 24A-MI-129, 2024 WL 3738448, at *4–5 (Ind. Ct. App. Aug. 9, 2024). We granted Grandmother's petition for transfer, thus vacating the Court of Appeals decision. *See* Ind. Appellate Rule 58(A).

## Standard of Review

A de novo standard of review applies to questions of statutory interpretation and to issues of standing. *See, respectively*, *Berryman v. State*, 127 N.E.3d 1246, 1248 (Ind. Ct. App. 2019); *In re Paternity of S.A.M.*, 85 N.E.3d 879, 886 (Ind. Ct. App. 2017).

## Discussion and Decision

Our opinion proceeds in two parts—one procedural and one substantive. In Part I, we address as a preliminary matter the issue of

appellate jurisdiction and whether this case properly stands before us.[3] Concluding that it does, we turn to the merits of the case in Part II, asking whether Grandmother had standing to petition for visitation with the Child.

## I. The trial court disposed of all issues as to all parties, leaving nothing for further determination.

Absent certain exceptions, the Court of Appeals may exercise jurisdiction only over final judgments and certain interlocutory orders. *Chitwood v. Guadagnoli*, 230 N.E.3d 932, 939 n.4 (Ind. Ct. App. 2024) (citing App. R. 5). A final appealable order is one that disposes of "all issues as to all parties, ending the particular case and leaving nothing for future determination." *Ramsey v. Moore*, 959 N.E.2d 246, 251 (Ind. 2012). An "interlocutory order," by contrast, refers to a judgment "made before a final hearing on the merits" and which "requires something to be done or observed but does not determine the entire controversy." *Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007), *trans. denied*. A party may appeal certain interlocutory orders (*e.g.*, for the payment of money) as a matter of right. App. R. 14(A). All other interlocutory orders require trial-court certification to authorize the appeal and acceptance by the Court of Appeals. App. R. 14(B). However, even "non-appealable interlocutory rulings merge into the final judgment and are subject to appellate review through an appeal from the final judgment." *Matter of Adoption of A.E.*, 191 N.E.3d 952, 956 (Ind. Ct. App. 2022), *trans. denied*.

As noted above, Mother filed a motion to dismiss under Trial Rule 12(B)(6). The trial court denied this motion in its Post-Hearing Order, which Mother then appealed as a "Final Judgment." App. Vol. 2, pp. 95–96. Generally, the denial of a motion to dismiss "is not in itself a final appealable order." *Sch. City of Gary v. Cont'l Elec. Co.*, 301 N.E.2d 803, 808

---

[3] Though addressed by neither party in their briefings, the issue of appellate jurisdiction can be raised at any time, including by a reviewing court on its own motion. *DeCola v. Norfolk S. Corp.*, 222 N.E.3d 938, 940 (Ind. 2023).

(Ind. Ct. App. 1973). Rather, the denial typically amounts to an interlocutory order requiring certification for appeal.

Citing the "substance" of Mother's arguments at trial, the Court of Appeals avoided any jurisdictional impediment by construing her motion to dismiss as a motion for relief from a void judgment under Indiana Trial Rule 60(B)(6), effectively rendering the trial court's order a final judgment subject to review on appeal. *O'Connell*, *supra*, at *3; *see* Ind. Trial Rule 60(C) (deeming a trial court's order or ruling on a 60(B) motion a final judgment from which a party may appeal). We decline to follow the same approach here because we consider it unnecessary. From our review of the record, the trial court's Post-Hearing Order from which Mother appeals disposed of *all* pending issues—not just her motion to dismiss—and, thus, *was* a final judgment.

When Grandmother petitioned for custody of the Child in 2022, she effectively sought to modify the Agreed Order, prompting appointment of a GAL to address "Visitation Issues" (among other things) and compelling the trial court to set a "Final Hearing in this matter." App. Vol. 2, pp. 60, 73; *see* Ind. Code § 31-17-5-7. After hearing the parties' testimony, reflecting on the GAL's recommendations, and weighing the parties' post-hearing arguments in the briefings they filed, the trial court rejected Grandmother's request for custody, denied Mother's motion to dismiss the visitation petition for lack of standing, resolved the issue of paternity, discharged the GAL from service, and ultimately declared that "[a]ll prior orders dealing with grandparent visitation and other matters" stemming from the Agreed Order would "remain in full force and effect." App. Vol. 2, pp. 18–19. In short, the Post-Hearing Order disposed of "all issues as to all parties, ending the particular case and leaving nothing for future determination."[4] *See Ramsey*, 959 N.E.2d at 251. *Cf. R.W.M. v. A.W.M.*, 926 N.E.2d 538, 542 (Ind. Ct. App. 2010) (holding that the trial court's judgment resolving child custody and support was not final because a

---

[4] The only motion that appears to have been left unaddressed by the trial court was Mother's Motion for Attorney Fees, filed March 16, 2023. However, Mother reiterated her request for attorney fees in her motion to dismiss, which, of course, the trial court denied.

mother's paternity action left one or more issues unresolved in the consolidated paternity, support, dissolution of purported marriage, and accounting actions).[5] And even if the trial court had denied Mother's motion to dismiss in a separate, non-final order, it would still merge into the appealable final judgment. We therefore proceed to consider Mother's appeal.

## II. The doctrine of paternity by estoppel precludes Mother from asserting Grandmother's lack of standing.

The General Assembly enacted the GVA to "promote intergenerational contact and strengthen the bonds of the extended family when the nuclear family has been dissolved." *In re Visitation of J.P.H.*, 709 N.E.2d 44, 46 (Ind. Ct. App. 1999) (emphasis and internal citations omitted). And though grandparents possess no constitutional liberty interest in their grandchildren (like parents do), the GVA "represents a Legislative recognition that a child's best interest is often served by developing and maintaining contact with his or her grandparents." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 462 (Ind. 2009) (internal quotation marks and citation omitted). The measure thus seeks to balance "two competing interests: the rights of the parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." *Id.* (internal quotation marks and citation omitted).

To that end, the GVA allows a paternal grandparent to petition for visitation if (1) the "child's parent is deceased," (2) the "marriage of the child's parents has been dissolved in Indiana," or (3) the "child was born out of wedlock" *and* the child's father has "established paternity in relation to the child." I.C. §§ 31-17-5-1(a), (b). Paternal grandparents who

---

[5] Of course, Mother's Notice of Appeal expressly took issue with the trial court's denial of her motion to dismiss. But that motion wasn't limited to challenging the 2018 Agreed Order. Rather, Mother argued that "*all orders* from grandparent visitation to the appointment of a GAL were voidable." App. Vol. 2, p. 17 (emphasis added); *see also id.* at 79.

fall outside these three recognized classes lack standing under the GVA, and their petition for visitation must be denied as a matter of law. *J.P.H.*, 709 N.E.2d at 46.

Because Mother and Father were never married, Grandmother sets forth her theory of visitation rights under subsection (a)(3). *See* Appellee's Br. at 11.[6] But because Father failed to establish paternity through the proper statutory channels, Mother insists that "there is no evidence that [Grandmother] is anything but an unrelated stranger without standing to assert any right to grandparent visitation." Appellant's Br. at 15–16, 19 (citing I.C. § 31-14-2-1). Grandmother acknowledges that it would have been preferable for Father to have established paternity in the Child before his death. But she argues that Mother's actions—admitting Father's paternity in writing and in open court, failing to dispute the DNA test results, and allowing the Grandmother and Child to maintain their relationship—effectively amounted to a request for the court to find that Father was the biological father of Child and "thus gave standing to Grandmother" to petition for visitation. Pet. to Trans. at 6, 7.

We pause here to acknowledge that, because the Agreed Order was a final judgment resolving Grandmother's visitation petition, the proper vehicle for Mother's standing challenge would have been a motion for relief from a void judgment under Indiana Trial Rule 60(B)(6) rather than a motion to dismiss. *See T.D. v. State*, 219 N.E.3d 719, 725–26 (Ind. 2023). But even if Mother had filed the appropriate motion, the trial court would have been justified in denying it for the reasons that follow.

A "child," for purposes of the GVA, is defined as a child "of both parties to the marriage"—a term of art that includes a child "born out of

---

[6] Arguably, Grandmother would have had an easier path to securing grandparent-visitation rights with the Child under subsection (a)(1) of the GVA. But we consider any argument under that subsection waived, given her insistence on pursuing visitation rights under subsection (a)(3).

wedlock to the parties." I.C. § 31-9-2-13(a)(1).[7] *See also Russell v. Russell*, 682 N.E.2d 513, 517 (Ind. 1997) (clarifying that the single statutory category—children of both parties—"*includes* children born out of wedlock as well as children born or adopted during the marriage—as long as both parties are the natural parents"). So, before entering its decree, a trial court must first determine whether the child with whom the grandparent seeks visitation is a child of the marriage—*i.e.*, whether the child is a biological child of both parents. *See Cochran v. Cochran*, 717 N.E.2d 892, 894 (Ind. Ct. App. 1999), *trans. denied*.

In the seminal case of *Russell v. Russell*, this Court acknowledged that a dissolution court's child-of-the-marriage determination "is not necessarily a determination that the divorcing husband is the biological father of the child." 682 N.E.2d at 518. But, the Court concluded, such a determination in some circumstances "is equivalent to a paternity determination, i.e., [a] determination that the divorcing husband is or is not the child's biological father." *Id.* For example, the Court explained, the divorcing parties will often "stipulate or otherwise explicitly or implicitly agree that the child is a child of the marriage." *Id.* And, absent "extraordinary circumstances," the trial court's acceptance of such a stipulation "is the *legal equivalent of a paternity determination* in the sense that the parties to the dissolution—the divorcing husband and wife—will be precluded from later challenging that determination."[8] *Id.* (emphasis added). At other times, the Court elaborated, the parties may "stipulate or otherwise agree that a child is not a child of the marriage," in which case principles of "equitable estoppel"

---

[7] The definition of a "child" also includes children "born or adopted during the marriage of the parties." I.C. § 31-9-2-13(a)(2). The definition under both subsections applies to dissolution proceedings, child support, custody, *and* visitation rights. I.C. § 31-9-2-13(a) (citing Indiana Code articles 31-15, 31-16, and 31-17).

[8] The trial court's child-of-the-marriage determination does not preclude the child or a putative father from "filing a separate action in juvenile court to establish paternity at a later time." *Russell v. Russell*, 682 N.E.2d 513, 518 (Ind. 1997).

may prevent one party from denying the other's paternity. *Id.* at 518–19 (citation omitted).[9]

The decision in *Russell* embodies the doctrine of paternity by estoppel—an equitable remedy long applied by Indiana courts to prevent a man from denying paternity of a child he has accepted as his own or to prevent a mother from denying the paternity of a man she formerly asserted was the father.[10] To be sure, paternity by estoppel has its limits in Indiana, given the state's equally important policy concern with "identifying correctly parents and their offspring." *Russell*, 682 N.E.2d at 517 n.7. Such proper identification, the *Russell* Court emphasized, "should prove to be in the best interests of the child for medical or psychological reasons" and "also plays a role in the just determination of child support." *Id.* (quoting *In re S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992)). *See also Sheetz v. Sheetz*, 63 N.E.3d 1077, 1085–86 (Ind. Ct. App. 2016) (Najam, J., dissenting) (stressing that Indiana's appellate courts "have rejected equitable estoppel as an

---

[9] In those cases where the child-of-the-marriage issue is "vigorously contested" by the parties, the Court opined, "the dissolution court has the authority to follow appropriate procedures for making paternity determinations." *Russell*, 682 N.E.2d at 518; *see, e.g.*, *Cooper v. Cooper*, 608 N.E.2d 1386, 1389 (Ind. Ct. App. 1993) (holding that the dissolution court may order blood testing during divorce proceedings to determine the biological father).

[10] *See, e.g.*, *Levin v. Levin*, 645 N.E.2d 601, 604–05 (Ind. 1994) (finding former husband estopped from denying paternity of a child born via heterologous artificial insemination where he consented to the procedure, held the child out as his own for many years, and did not object to a dissolution decree declaring the child a child of the marriage); *Sheetz v. Sheetz*, 63 N.E.3d 1077, 1080, 1081 (Ind. Ct. App. 2016) (finding husband estopped in divorce action from disclaiming paternity where wife relied on his representations that he would raise the child as his own and instructed her not to tell the biological father, not to seek support from him, and not to file a paternity action); *In re Paternity of H.H.*, 879 N.E.2d 1175, 1176–78 (Ind. Ct. App. 2008) (finding mother estopped from challenging father's paternity when she executed paternity affidavit despite both parents' knowledge that the father was not the child's biological father); *Vanderbilt v. Vanderbilt*, 679 N.E.2d 909, 911 (Ind. Ct. App. 1997) (finding that laches barred wife in divorce action from rebutting the presumption of husband's paternity where she reassured husband that he was the father despite blood tests showing otherwise, acquiesced in and encouraged husband's strong family relationship with the child, and failed to establish paternity in another man within the statute of limitations despite having that opportunity), *trans. denied*. *Cf. Matter of Estate of Peters*, 206 N.E.3d 434, 442 (Ind. Ct. App. 2023) (holding that father's repudiation of the child as his own in earlier divorce proceedings did not, under a theory of res judicata, settle the issue of paternity and thus did not bar the child's heirship petition upon father's death).

attempt to circumvent the statutory requirement that support orders be entered only against biological or adoptive fathers"). But, like in dissolution proceedings, we see no reason to preclude the doctrine's application in cases brought under the GVA.[11]

Here, Mother agreed to change the Child's name to reflect Father's surname, she agreed to add Father's name to the Child's birth certificate, and she acknowledged "in open Court and on the record" that Father was Child's father. App. Vol. 2, p. 26. What's more, Mother's receipt of Social Security survivor's benefits, which she conceded at oral argument, would have required her to acknowledge and prove that Father was the Child's biological father. Under these circumstances, we hold that the trial court's acceptance of Mother's stipulations in the Agreed Order "is the legal equivalent of a paternity determination." It would be inequitable now to deprive Grandmother of the relationship she has fostered with the Child based on Mother's stipulation to Father's paternity and the terms of visitation under the Agreed Order. Thus, while Mother may petition for modification of visitation in the future, *see* I.C. § 31-17-5-7, she is estopped from asserting Grandmother's lack of standing to petition for visitation, *see Russell*, 682 N.E.2d at 518–19; *see also Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997) (rejecting mother's argument that a trial court's provisional GVA order was void *ab initio* given her prior stipulation to that order).

Finally, having established Grandmother's standing to petition for visitation, we briefly address—and dispose of—Mother's remaining appeal issues. Mother argues the Agreed Order rested on inadmissible evidence of Father's paternity and violated her constitutional right to care, custody, and control of her children. Appellant's Br. at 17, 24. But the merits of the trial court's approval of the Agreed Order back in 2018 are no longer appealable. Mother also asserts Grandmother misrepresented that Father "had established paternity prior to his death" by attaching a

---

[11] In fact, the GVA falls under Indiana Code article 31-17, which applies to dissolution cases.

purported DNA test report to her petition. *Id.* at 18. But Mother has offered no evidence suggesting the report contains any misrepresentation.

## Conclusion

For the reasons above, we exercise our appellate jurisdiction to hold that, because Mother is estopped from denying Father's paternity, Grandmother has standing under the GVA to petition for visitation with the Child.

Affirmed.


Rush, C.J., and Massa, J., concur.
Molter, J., concurs in part and in the judgment with separate opinion in which Slaughter, J., joins.

ATTORNEY FOR APPELLANT
John M. Acosta, Jr.
Acosta Law Office, P.C.
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE
Samantha M. Joslyn
Law Office of Samantha M. Joslyn
Rensselaer, Indiana

Erik H. Carter
Carter Legal Services LLC
Noblesville, Indiana

**Molter, J., concurring in part and in the judgment.**

As the Court explains, Mother's standing argument is not properly before us because she has not filed a motion to set aside the 2018 Agreed Order. *Ante*, at 8 ("We pause here to acknowledge that, because the Agreed Order was a final judgment resolving Grandmother's visitation petition, the proper vehicle for Mother's standing challenge would have been a motion for relief from a void judgment under Indiana Trial Rule 60(B)(6) . . . ."). I agree, so I concur with the Court's decision to affirm the judgment.

The Court doesn't stop there, though. It goes on to explain in dicta that if Mother had filed a motion to set aside the judgment, that motion would have failed. I don't have much reason to doubt that, although I think on these facts what the Court refers to as "paternity by estoppel" is really just "judicial estoppel" and not a non-statutory basis for establishing paternity. *See Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 169–70 (Ind. 2024) (describing the doctrine of judicial estoppel). But the parties have not briefed any estoppel issues, so I'm reluctant to break new ground here, even in dicta.

Slaughter, J., joins.